155 Mich. App. 604 (1986)
400 N.W.2d 695
In re COOK ESTATE
WARDEN
v.
COOK
Docket No. 87105.
Michigan Court of Appeals.
Decided October 21, 1986.
Stroup, Mulhauser, Johnson & Tresidder, P.C. (by Charles W. Johnson), for appellee.
Jerry L. Sumpter, P.C. (by Richard E. Noble), for appellant.
Before: HOOD, P.J., and D.E. HOLBROOK, JR., and W.R. PETERSON,[*] JJ.
W.R. PETERSON, J.
This is an appeal from the action of the probate court removing appellant, Richard Cook, as personal representative of the estate of Mikell John Cook.
On the face of it, the question is whether the probate court has the power to remove a personal representative who obtained his appointment by false representation. While the section of the Revised Probate Code, MCL 700.574; MSA 27.5574, which deals with removal of fiduciaries does not list erroneous appointment, lack of interest in the estate or false representation of such interest among the causes justifying removal, we think it implicit in the provisions of the Revised Probate Code specifying who may properly petition for the administration of an estate, MCL 700.115; MSA 27.5115, and the order of preference as to who is entitled to be appointed, MCL 700.116; MSA 27.5116, that one who has no right to be appointed *606 fiduciary[1] may not retain that position when shown to have petitioned falsely.[2]
As may be suspected, however, there is more involved. What really matters to those who held Mikell nearest and dearest to their hearts is this: (1) who will share in Mikell's estate which will consist solely of an action for injuries which Mikell suffered and which caused his death, and (2) who will determine whether and how such an action will be pursued? The dry legal issue masking it all is about res judicata.
Mikell Cook was not yet four years old when he met an untimely death, allegedly because of the negligence of George Werden. Appellant petitioned for the administration of Mikell's estate. He said in the petition that he was Mikell's father. A birth certificate said so, as did the judgment of divorce which Mikell's mother, Brenda, had obtained from appellant. When the petition was granted and appellant was named personal representative of Mikell's estate, he commenced a wrongful death action against George Werden. Werden's wife, Brenda, then filed the instant petition to remove appellant as personal representative of Mikell's estate.
No one disputes that George Werden's wife, Brenda, was Mikell's mother[3] and that she is the same Brenda who was previously married to and divorced from appellant.
So, we have a mother, the death of whose son has led her former husband to bring a wrongful *607 death action against her present husband,[4] seeking to remove the former as personal representative of her son's estate. Her petition alleged that appellant was not Mikell's father, that he therefore had no interest in Mikell's estate,[5] and that his appointment was thus improper.
Despite the divorce judgment that said that Mikell was a child of Brenda's marriage to appellant, the probate court heard her petition and granted it. The evidence consisted of the testimony of Brenda that appellant positively could not have been Mikell's father, and appellant's testimony that he could have been Mikell's father and thought that he was, together with the attempts of each to explain why they had said otherwise on other occasions.[6] We need not analyze that evidence at length since appellant does not raise any *608 questions on appeal as to the correctness of the finding.[7]
Appellant's position here, as before the probate court, is that the judgment of divorce is res judicata as to the paternity of Mikell and that it bars Mikell's mother from denying appellant's paternity in the probating of Mikell's estate.
In Loesch v First National Bank of Ann Arbor, 249 Mich 326, 330; 228 NW 717 (1930), the Court said:
The final decree of a court of competent jurisdiction made and entered in a proceeding of which all parties in interest have due and legal notice and from which no appeal is taken cannot be set aside and held for naught by the decree of another court in a collateral proceeding commenced years subsequent to the date of such final decree.
*609 The doctrine of res judicata bars a litigant from relitigating a claim when (1) the former action was decided on the merits; (2) the matter contested in the second action was or could have been decided in the first; and (3) the two actions are between the same parties or their privies. Admiral Merchants Motor Freight, Inc v Dep't of Labor, 149 Mich App 344, 350; 386 NW2d 193 (1986).
While appellee argues, and the probate court considered it significant, that the question of paternity was not tried as a contested issue in the divorce proceeding, that is beside the point. The doctrine of res judicata applies to default judgments[8] and consent judgments[9] as well as to judgments derived from contested trials, and includes every point properly the subject of the litigation which the parties could have brought forward at the time. Admiral, supra; Cogan v Cogan, 119 Mich 476; 326 NW2d 414 (1982), lv den 417 Mich 988 (1983); Harrington v Huff & Mitchell Co, 155 Mich 139; 118 NW2d 924 (1908); Gose v Monroe Auto Equipment Co, 409 Mich 147; 294 NW2d 165 (1980).
The issue of a marriage is one of the subjects of every action for divorce brought in this state. MCL 552.16; MSA 25.96 and MCL 552.45; MSA 25.121.[10] While the immediate purposes of the divorce litigation *610 (custody, support and visitation) do not coincide precisely with the probate court's jurisdiction which also involves rights of descent and distribution, the underlying legal and factual determination is identical.
In Jones v Chambers, 353 Mich 674, 680; 91 NW2d 889 (1958), the Court spoke of res judicata in this language:
Where issues of fact or law have been finally decided by a court of competent jurisdiction in one legal action which are essential to the maintenance of another legal action, it is universally held that the second action must fail.
Michigan's leading case on the doctrine of res judicata is Justice COOLEY'S opinion in Jacobson v Miller, 41 Mich 90. The second headnote gives us this pertinent summary:
"An adjudication is conclusive in respect to (1) the subject matter of the litigation, and (2) the point of fact or law or both necessarily settled in determining the issue on the subject matter."
In determining the identity of the actions,[11] it appears that the subject matter, the paternity of Mikell, is the same in both actions; that that subject matter obviously involves the same event; and that the evidence necessary to prove the factual issue is the same.[12] We thus conclude that the appellee, having obtained a judgment of divorce determining her son's paternity, is barred by the doctrine of res judicata from litigating his paternity in proceedings for the probating of his estate.
Reversed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] One having no interest in an estate is not entitled to petition for the administration of the estate. Diem v Drogmiller, 158 Mich 380; 122 NW 637 (1909).
[2] While no Michigan cases are found on point, see Estate of Lucas v Jarrett, 55 NC App 185; 284 SE2d 711 (1981).
[3] Given what this record shows about contemporary mores and indifference to truthfulness, perhaps one ought not take anything for granted.
[4] The wrongful death action has since been dismissed in the circuit court on grounds of parental immunity, which dismissal is the subject of a separate appeal in this Court.
[5] There are, of course, ramifications other than those involving the wrongful death suit. If appellant is not Mikell's father and heir, then the other four children born to Brenda and appellant are not Mikell's heirs either.
[6] The evidence disclosed this sequence of events:

1. After many years of marriage and four children, Brenda and appellant separated in June of 1978. Brenda began living with one David Vieau.
2. Mikell conceived, date uncertain. Brenda testified no sexual relationship with appellant after separation; appellant testifies to the contrary, though uncertain of date.
3. November 1, 1978, Brenda files complaint for divorce.
4. June 19, 1979, Mikell born, perhaps not full term.
5. August 3, 1979, Brenda and David Vieau filed an acknowledgement of paternity of Mikell in probate court pursuant to MCL 700.111(4)(a); MSA 27.5111(4)(a), through the good offices of the Department of Social Services.
6. Appellant appeared before the court on a support show cause hearing and said that Brenda told him he was not the father of Mikell.
7. September 18, 1979, proofs were taken pro confesso on Brenda's divorce complaint. Counsel advised the court that the judgment would provide for five children. The court made specific inquiry because of apellant's statements at the show cause hearing. Brenda replied that appellant was not contesting paternity. She then went on to testify that five children, Mikell included, had been born of her marriage to appellant.
8. January 14, 1980, divorce judgment entered naming Mikell as a child of the marriage.
9. July 22, 1980, appellant again before the circuit court on a show cause hearing, denies paternity and produces a copy of the acknowledgement of paternity signed by Brenda and David Vieau. No action is taken, however, to correct or modify the judgment.
10. May 7, 1963, Mikell dies, twelve days after being injured.
11. October 25, 1984, appellant appointed personal representative of Mikell's estate.
[7] A number of questions might have been raised before the probate judge but were not. Was the evidence sufficiently clear and convincing to overcome the presumption of legitimacy? MCL 552.29; MSA 25.107. Serafin v Serafin, 401 Mich 629; 258 NW2d 461 (1977). The presumption seems never to have been considered. Moreover, what about the effect of the enactment of a similar presumption in the Revised Probate Code, MCL 700.111(2); MSA 27.5111(2), to which is added this further limitation, MCL 700.111(3); MSA 27.5111(3):

Only the person presumed to be the natural parent of a child under subsection (2) may disprove any presumption that may be relevant to the relationship....
Neither do we consider whether the judgment of divorce may be modified or collaterally attacked because of some possible infirmity therein, those questions not being before us.
[8] Jacobson v Miller, 41 Mich 90; 1 NW 1013 (1879); 47 Am Jur 2d, Judgments, § 1197, pp 213-214; Restatement Judgments 2d, § 47, pp 22-27.
[9] Thelen v Ducharme, 151 Mich App 441; 390 NW2d 264 (1986).
[10] These statutory provisions seem to have been overlooked in In re Kinsella Estate, 120 Mich App 199, 205; 327 NW2d 437 (1982), where the Court found it significant that there had not been a contested trial on the issue of paternity.

The result in Kinsella, however, was correct nonetheless, for the issue there was not one of res judicata but of collateral estoppel; because of the difference in parties. Children are not parties to divorce or annulment actions and thus are not bound thereby. 24 Am Jur 2d, Divorce and Separation, § 1099, pp 1082-1085. As noted in Kinsella, collateral estoppel applies only where the same parties are involved and the same issue was in fact litigated. Restatement Judgments, 2d, § 68 (2), pp 168-172; 47 Am Jur 2d, Judgments, § 1198, p 214; 10 Am Jur 2d, Bastards, § 7, pp 847-848.
[11] See the tests for determining the identity of actions suggested in 46 Am Jur 2d, Judgments, § 406 et seq.
[12] Mango v Plymouth Twp Bd of Trustees, 33 Mich App 715; 190 NW2d 285 (1971); Sheridan Drive Ass'n v Woodlawn Backproperty Owners Ass'n, 29 Mich App 64; 185 NW2d 107 (1970).