209 Mich. App. 66 (1995)
530 N.W.2d 487
In re CLAIM OF RODNEY TURNER, II (TURNER v. GRACE HOSPITAL)
Docket No. 160115.
Michigan Court of Appeals.
Submitted October 5, 1994, at Detroit.
Decided February 22, 1995, at 9:10 A.M.
Kirk & McCargo, P.C. (by Samuel E. McCargo), for Helen Turner.
Riley P. Richard, for Rodney Turner, II.
Before: HOOD, P.J., and TAYLOR and D.A. SERVITTO,[*] JJ.
PER CURIAM.
Plaintiff, Helen Turner, as personal representative of the estate of her deceased son, Rodney Turner, appeals as of right the trial court's order distributing the $525,000 wrongful *68 death settlement reached with Grace Hospital. We reverse.
Following the death of Rodney Turner, who was nineteen years old at the time, Helen Turner brought a wrongful death action against Grace Hospital. Named in the suit as persons entitled to bring a claim were Helen Turner, her husband, and decedent's six siblings. Rodney Turner, II (hereinafter claimant), was also named as a claimant. Claimant was the son of decedent's girl friend, Michelle Brown, and was five months old at the time of decedent's death. The parties to this action do not seriously dispute the fact that before decedent's death, claimant was considered to be decedent's son and that decedent treated him as such.
As stated above, the suit was settled for $525,000. After deducting costs and attorney fees, the balance remaining to be distributed among the claimants was $347,666. Michelle Brown, as conservator of claimant's estate, agreed to accept $40,000 of the $347,666 on behalf of the minor claimant. Plaintiff moved for entry of judgment and distribution of proceeds pursuant to the agreement with Brown. The trial court refused to grant the motion after concluding that Brown was unable to act in claimant's best interest. A new conservator was appointed, and the proposed distribution was challenged. An evidentiary hearing followed. At the conclusion of the evidentiary hearing, the trial court awarded claimant $106,520 for loss of financial support and $137,600 for loss of society and companionship. The remaining amount was apportioned among the other aforementioned plaintiffs. Plaintiff appeals the trial court's order of distribution of settlement.
Initially, plaintiff claims that the trial court, in determining whether claimant was decedent's child, erred in failing to apply the definition of *69 "child" from the intestate succession act. Reluctantly, we agree. The persons entitled to recover in a wrongful death action are limited under MCL 600.2922(3); MSA 27A.2922(3), to the decedent's "spouse, children, descendants, parents, grandparents, brothers and sisters." The laws of intestate succession should be used to determine whether an individual falls within one of these categories. In re Renaud Estate, 202 Mich App 588, 591; 509 NW2d 858 (1993).
For the purposes of intestate succession, a man is considered the natural father of a child born out of wedlock under MCL 700.111(4); MSA 27.5111(4), if one of the following conditions is established:
(a) The man joins with the mother of the child and acknowledges that child as his child in a writing executed and acknowledged by them in the same manner provided by law for the execution and acknowledgment of deeds of real estate and recorded at any time during the child's lifetime in the office of the judge of probate in the county in which the man or mother of the child reside at the time of execution and acknowledgment....
(b) The man joins with the mother in a written request for a correction of certificate of birth pertaining to the child that results in issuance of a substituted certificate recording the birth of the child.
(c) The man and the child have borne a mutually acknowledged relationship of parent and child that began before the child became age 18 and continued until terminated by the death of either.
(d) The man has been determined to be the father of the child and an order of filiation establishing that paternity has been entered pursuant to the paternity act, Act No. 205 of the Public Acts of 1956, being sections 722.711 to 722.730 of the Michigan Compiled Laws.
The express mention in subsection 4 of these four *70 circumstances under which a man is considered to be the natural father of a child born out of wedlock implicitly excludes all other circumstances. See Easley v John Hancock Mutual Life Ins Co, 403 Mich 521; 271 NW2d 513 (1978); In re Vellenga Estate, 120 Mich App 699, 703; 327 NW2d 340 (1982).
Pursuant to subsection 4(a), a man is considered the natural father of a child if he acknowledges that the child is his in a writing executed and acknowledged in the same manner provided by law for the execution and acknowledgment of deeds of real estate. This written acknowledgment must also be properly recorded. Notably, deeds pertaining to real estate must "be executed in the presence of 2 witnesses, who shall subscribe their names to the deed as such and the persons executing the deeds may acknowledge the execution before any judge, clerk of a court of record, or notary public with the state." MCL 565.8; MSA 26.527. For purposes of intestate succession, strict compliance with the aforementioned requirements is necessary. Ghosson v Stewart's Estate, 319 Mich 204, 207; 29 NW2d 282 (1947).
At the evidentiary hearing, a document captioned "Affidavit of Parentage" was introduced for the purpose of establishing that decedent had formally acknowledged that he was claimant's father. Had this document been properly executed, acknowledged, and recorded, the requisites of subsection 4(a) would have been satisfied, and claimant could have recovered a portion of the wrongful death settlement. Unfortunately for claimant, the circumstances surrounding the execution of the affidavit of parentage do not satisfy the requirements for the execution and acknowledgment of deeds of real estate.
Michelle Brown's grandfather, who appears on *71 the affidavit of parentage as a witness, testified at the evidentiary hearing that he did not actually witness decedent sign the affidavit. In fact, the grandfather stated that he affixed his signature to the affidavit as a witness after decedent's death. Further, although the notary dated the affidavit March 16, 1990, some nine days before decedent died, the grandfather testified that the document actually was not notarized until after decedent's death. Similarly, the other "witness," V.E. Thomas, an employee at the travel agency where the affidavit was notarized, did not see decedent sign the document. Thus, despite the fact that the affidavit appears on its face to comply with the statutory requirements, the foregoing makes it clear that the document was not attested properly. Accordingly, because the affidavit does not meet the requirements for the attestation and execution of a deed under MCL 565.8; MSA 26.527, it is insufficient to establish decedent as claimant's natural father under subsection 4(a).
Regarding subsection 4(b), Michelle Brown testified that she used the affidavit of parentage to acquire a birth certificate listing decedent as claimant's father. As noted above, the affidavit of parentage is at the very least of questionable origin. We will not take the illogical step of recognizing the birth certificate as reliable when its predicate, the affidavit, has been shown to be unreliable. More importantly, subsection 4(b) requires the mother and father to make jointly a written request for a corrected birth certificate. This did not happen here. Instead, the request for a corrected birth certificate was made solely by Brown after decedent's death. Therefore, the joint application requirement was not met.
The record does reveal that decedent played an active paternal role in claimant's life within the *72 meaning of subsection 4(c). However, at the time of decedent's death, claimant was only five months old. There is no evidence that claimant recognized and acknowledged a father-son relationship with decedent. In light of claimant's tender age, it is unlikely that he was capable of acknowledging a relationship with decedent. Therefore, because subsection 4(c) requires a showing of a mutually acknowledged relationship of parent and child, this section likewise has not been satisfied. Because no paternity action was filed, subsection 4(d) is not applicable.
Accordingly, the trial court erred as a matter of law in determining that claimant was entitled to recover under the wrongful death act. In re Renaud Estate, supra.
Even if claimant had been entitled to a portion of the settlement proceeds, the trial court erred in the manner in which it distributed the proceeds. Most notably, the trial court held that claimant was entitled to $106,520 for loss of financial support. In arriving at this figure, the court did not consider the amount decedent actually had provided or could be expected to provide. Rather, the court relied on evidence presented by a certified public accountant that the cost of raising a child to the age of eighteen was $148,000. The court then subtracted from this amount the $32,922 in social security benefits that claimant would receive. By doing so, the court erroneously ignored decedent's actual financial status and relied on an average figure applicable to any deceased parent.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.