VanGESSEL v LAKEWOOD PUBLIC SCHOOLS

Docket No. 182954. Submitted June 18, 1996, at Grand Rapids. Decided November 12, 1996, at 9:00 A.M. Leave to appeal sought.

Matt VanGessel, whose employment as a probationary teacher in the Lakewood Public Schools was terminated for unsatisfactory performance at the end of his first school year, brought an action in the Ionia Circuit Court against the Lakewood Public Schools and its board of education, alleging that the defendants had failed to comply with § 3a(1) of Article II of the teacher tenure act, MCL 38.83a(1); MSA 15.1983(1)(1), in not giving him an individualized development plan at the start of the school year and that, because of that failure, his performance had to be deemed satisfactory pursuant to § 3a(2), MCL 38.83a(2); MSA 15.1983(1)(2). The court, James K. Nichols, J., granted summary disposition for the defendants, ruling that the plaintiff had failed to state a claim upon which relief could be granted. The plaintiff appealed.

The Court of Appeals *held*:

MCL 38.83a(1); MSA 15.1983(1)(1), which requires the provision of an individualized development plan to a probationary teacher who has been employed by a school district for at least one full school year, and § 3 of Article II of the teacher tenure act, MCL 38.83; MSA 15.1983, which provides that at least sixty days before the close of a school year a probationary teacher must be provided with a written statement regarding whether performance of the teacher has been satisfactory, must be read in harmony to effectuate the legislative intent of protecting teachers from arbitrary and capricious employer practices and the legislative intent of providing each teacher a guide for future actions. Under an harmonious construction of §§ 3 and 3a, a first-year probationary teacher who, like the plaintiff, receives an evaluation at the end of the school year indicating that performance was unsatisfactory, is not entitled to an individualized development plan.

Affirmed.

SCHOOLS — TEACHER TENURE ACT — PROBATIONARY TEACHERS — INDIVIDUALIZED DEVELOPMENT PLANS.

A first-year probationary public school teacher whose employment is terminated upon written notice of unsatisfactory performance is

not entitled to be provided with an individualized development plan under the teacher tenure act (MCL 38.83, 38.83a[1]; MSA 15.1983, 15.1983[1][1]).

*White, Przybylowicz, Schneider & Baird, P.C.* (by *Larry R. Betz*), for the plaintiff.

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by *David M. Buday* and *Lisa A. Letarte*), for the defendants.

Before: MACKENZIE, P.J., and MARKEY and J. M. BATZER,* JJ.

MARKEY, J. Plaintiff, Matt VanGessel, appeals from a grant of summary disposition to defendants Lakewood Public Schools and the Board of Education of Lakewood Public Schools pursuant to MCR 2.116(C)(8). In his complaint, plaintiff alleged that defendants' failure to provide him with an "individualized development plan" (IDP) in his first year of probationary employment violated MCL 38.83a; MSA 15.1983(1) and that defendants' failure to do so entitled him to be reemployed with the school district. We affirm.

We review de novo the trial court's decision to grant summary disposition based upon the plaintiff's failure to state a claim upon which relief can be granted. *State Treasurer v Schuster*, 215 Mich App 347, 350; 547 NW2d 332 (1996). Taking all well-pleaded allegations in plaintiff's complaint as true, as well as any reasonable inferences drawn from the allegations, we agree that plaintiff's claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *But-*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ler v Ramco-Gershenson, Inc, 214 Mich App 521, 534; 542 NW2d 912 (1995).

Defendants employed plaintiff as a first-year probationary teacher for the 1993-94 academic school year but terminated his employment at the end of the school year for unsatisfactory performance. Plaintiff sued defendants, alleging that they failed to provide him with an IDP at the beginning of the 1993-94 school year in violation of the teacher tenure act, MCL 38.83a(1); MSA 15.1983(1)(1). MCL 38.83a(1) and (2); MSA 15.1983(1)(1) and (2) provide, in pertinent part:

(1) *If a probationary teacher*[1] *is employed by a school district for at least 1 full school year,* the controlling board of the probationary teacher's employing school district shall ensure that the teacher is provided with an individualized development plan developed by appropriate administrative personnel in consultation with the individual teacher and that the teacher is provided with at least an annual year-end performance evaluation each year during the teacher's probationary period. The annual year-end performance evaluation shall be based on, but is not limited to, at least 2 classroom observations held at least 60 days apart, unless a shorter interval between the 2 classroom observations is mutually agreed upon by the teacher and the administration, and shall include at least an assessment of the teacher's progress in meeting the goals of his or her individualized development plan. . . .

(2) Failure of a school district to comply with subsection (1) with respect to an individual teacher in a particular school year is conclusive evidence that the teacher's performance for that school year is satisfactory. [Emphasis added.]

---

[1] "[A] teacher is in a probationary period during his or her first 4 full school years of employment." MCL 38.81(1); MSA 15.1981(1).

The teacher tenure act does not define the term "individualized development plan," but the parties agree that it is a fluid document unique to each teacher that analyzes and summarizes the teacher's strengths, weaknesses, and professional goals. The term "teacher" is defined in the act as "a certificated individual employed for a full school year by any board of education or controlling board." MCL 38.71(1); MSA 15.1971(1). We acknowledge, as did the trial court and the parties, that this case presents an issue of first impression because no court has interpreted MCL 38.83a; MSA 15.1983(1) since its amendment in June 1993.

On appeal, plaintiff asserts that the trial court erred in finding that defendants had no clear legal duty to provide a first-year probationary teacher employed for a full school year with an IDP under MCL 38.83a(1); MSA 15.1983(1)(1). According to plaintiff, the phrase "*is employed* for at least 1 full school year" as used in § 3a is the equivalent of "*under contract* for at least 1 full school year," but not, as defendants argue, "*has worked* for at least 1 full school year." Thus, according to plaintiff, the Legislature intended that all probationary teachers receive an IDP every year of employment during the entire probationary period. We disagree.

Statutory interpretation is a legal issue that we review de novo on appeal. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). Our primary goal in interpreting statutes is to ascertain and give effect to the intent of the Legislature. *Id.* If the plain and ordinary meaning of the statute is clear, then judicial construction is neither necessary nor permitted. If reasonable minds can differ

concerning the meaning of the statute, however, then judicial construction is appropriate. *Rowell v Security Steel Processing Co*, 445 Mich 347, 351, 353; 518 NW2d 409 (1994); *Heinz, supra*. We must look to the object of the statute and the harm that it was designed to remedy and apply a reasonable construction in order to accomplish the purpose of the statute. *ABC Supply Co v City of River Rouge*, 216 Mich App 396, 398; 549 NW2d 73 (1996). The clear legislative intent in passing the teacher tenure act was to protect teachers from the arbitrary and capricious employment practices of their employers. *Davis v Harrison Community Schools Bd of Ed*, 126 Mich App 89, 95; 342 NW2d 528 (1983). While the Legislature could have made its intentions more clear, we believe that construing both the teacher tenure act as a whole and the language of § 3a(1) requires that we affirm the trial court's grant of summary disposition.

First, when construing a statute, particular provisions should be read in the context of the entire statute to produce an harmonious whole. *ABC Supply Co, supra*. Notably, § 3 of Article II, MCL 38.83; MSA 15.1983, states:

> At least 60 days before the close of each school year the controlling board shall provide the probationary teacher with a definite written statement as to whether or not his work has been satisfactory. Failure to submit a written statement shall be considered as conclusive evidence that the teacher's work is satisfactory. Any probationary teacher or teacher not on continuing contract shall be employed for the ensuing year unless notified in writing at least 60 days before the close of the school year that his services will be discontinued.

Notably, plaintiff does not challenge defendants' compliance with MCL 38.83; MSA 15.1983. When it enacted the new IDP requirement for probationary teachers contained in 1993 PA 59, the Legislature did not rewrite a portion of the former statute or amend § 3. Instead, it created a new § 3a, thereby linking this new provision to the existing § 3. Interpreting these two provisions as a whole, we find that the language of these statutory provisions, the cases interpreting § 3, and a practical consideration of the Legislature's intent support defendants' and the trial court's interpretation of § 3a.

It is uncontested that defendants complied with § 3 when they timely notified plaintiff that they found his work so unsatisfactory that his services would be discontinued at the end of the 1993-94 school year. Although Michigan courts have refused to require written statements detailing the reasons why a school board believes a probationary teacher's work was unsatisfactory, a written notice of satisfactory or unsatisfactory work is mandated in § 3 because the additional requirement of explaining the school board's conclusions was not within the legislative intent manifested in § 3. *Lipka v Brown City Community Schools (On Rehearing)*, 403 Mich 554, 557-560; 271 NW2d 771 (1978); *Simmons v Marlette Bd of Ed*, 73 Mich App 1, 5-11; 250 NW2d 777 (1976). Apparently, the Legislature believed that the written notice requirement in § 3 was sufficient to place a probationary teacher on notice regarding future employment status, thereby protecting the probationary teacher from arbitrary discharge. The written notice also aids the probationary teacher in determining whether to continue as a probationary employee at the same

location or seek other employment opportunities before the beginning of the ensuing school year. See *Boyce v Royal Oak Bd of Ed*, 407 Mich 312, 318; 285 NW2d 196 (1979).

Further, the Supreme Court in *Lipka, supra* at 558, opined that "[a] probationary period is provided in the act and distinguished from tenure to afford a trial period during which a controlling board may make a subjective determination of whether a certain teacher satisfies that district's particular needs and policy. We should not require that such a procedure meet an objective standard applicable to all school districts." Against this backdrop, and after reading these two related statutes in pari materia, we find that the IDP requirement of § 3a does not mandate that every probationary teacher must receive an IDP before, during, or immediately after the completion of the teacher's first full school year. *Schuster, supra* at 352.

Second, the phrase "is employed for at least 1 full school year" is more easily interpreted when analyzed by its grammatical components: "is employed" is a past participle verb, while "for at least 1 full school year," is a prepositional phrase modifying the verb. Indeed, the adverbial prepositional phrase "for at least 1 full school year" answers the question when or to what extent the probationary teacher must be "employed." The Gregg Reference Manual (7th ed), p 470. Thus, the condition precedent to receiving an IDP is the completion of employment as a probationary teacher for at least one school year, according to the language of § 3a. Further, as we discussed above, the condition precedent presumes the successful completion of the preceding school year, i.e., the probationary teacher was not terminated at the end of the

school year for unsatisfactory performance but will be teaching during the ensuing school year.

Indeed, plaintiff's interpretation of the phrase at issue is at best strained. He would have us believe that the Legislature included the language "for at least 1 full school year" in order to distinguish between probationary teachers who begin teaching on the first day of school versus the second day of school or during the next calendar year. The use of the term "employed for a full school year" in MCL 38.71; MSA 15.1971 in defining a "teacher" contradicts this reading of § 3a. Otherwise, certified individuals brought on staff to teach after the first day of class could not be classified as probationary "teachers," and we find no provisions within the teacher tenure act that would apply to these individuals. Accord *Davis, supra* at 94-96.

Additionally, we find no mandate under § 3 requiring that a first-year probationary teacher such as plaintiff who has received notice that his performance is unsatisfactory in compliance with § 3 must also receive or have received an IDP pursuant to § 3a. To require an IDP after a first-year probationary teacher is terminated would be incongruous with § 3 and with the cases requiring no explanation of why the probationary employee's performance was deemed unsatisfactory. *Lipka, supra; Simmons, supra.* Although a school district or controlling board *may* issue an IDP *during* the probationary teacher's first year, and by statute must issue one after the teacher completes a full school year and before the second year begins, we find no statutory language or policy otherwise mandating when the IDP must be given. Rather, it is inconceivable to require that school districts prepare

meaningful and constructive IDPs for total strangers in a vacuum and without appropriate observation time simply to ensure that first-year probationary teachers receive an IDP within that initial year of teaching. In contrast, the Legislature specified that the probationary teacher would receive "at least an *annual year-end* performance evaluation *each year* during the teacher's probationary period" but did not require an *annual* IDP. MCL 38.83a(1); MSA 15.1983(1)(1). Clearly, the Legislature could have used the same language if it intended that probationary teachers receive annual IDPs, but it did not. In order to give meaning to the express language of this statute, we therefore reject plaintiff's interpretation of the IDP requirement of § 3a on the basis that it is disharmonious with the provisions of the teacher tenure act and ignores the fact that an IDP, as a tool for promoting professional growth and development, is intended to guide a teacher in *future* actions, cannot be constructed absent a period of observation, oversight, and evaluation. See *Schuster, supra* at 351-352. Given that a probationary teacher's performance evaluation requires "at least 2 classroom observations held at least 60 days apart," it appears evident that the development of an effective IDP would require substantial familiarity with the teacher for whom it is designed. So, although the statute is silent regarding the time frame and the method for providing an IDP, common sense must prevail in this determination and analysis.

In summary, we find that § 3a is subject to judicial interpretation, that it should be read harmoniously with § 3, that a probationary teacher who receives an unsatisfactory evaluation notice pursuant to § 3 is not entitled to the protections and benefits afforded in

§ 3a, and that § 3a does not entitle a probationary teacher to an IDP before, during, or immediately after the completion of that teacher's first full probationary school year. We therefore affirm the grant of summary disposition in favor of defendants pursuant to MCR 2.116(C)(8) because no factual development could support plaintiff's complaint.

Our resolution of this issue makes it unnecessary for us, like the trial court, to determine whether plaintiff had a clear legal right to reemployment under § 3a(2) because of defendants' failure to give him an IDP.[2]

Affirmed.

---

[2] As an aside, however, we cannot believe that the Legislature intended that unsatisfactory employees be entitled to receive IDPs, which would be a futile exercise given the probationary teacher's inability to satisfy the requisite skill level, and to be reemployed merely because this futile act was not completed. To read such an absurdity into the statute would indeed wreak havoc with school districts attempting to weed out subpar teachers. We find no protections in the teacher tenure act for unsatisfactory probationary teachers.