*In re* QUINTERO ESTATE

FUGLSETH v QUINTERO

Docket No. 189578. Submitted February 19, 1997, at Grand Rapids.
        Decided July 25, 1997, at 9:15 A.M. Leave to appeal sought.

   James, Timothy, Tamela, and Robert Fuglseth petitioned the Ottawa
      County Probate Court for a determination of the heirs at law of
      Rudolph Quintero, Sr., who died intestate, after Rudolph Quintero,
      Jr., the personal representative of the decedent's estate and the
      decedent's son from his marriage to Oralia Quintero, refused to rec-
      ognize the Fuglseths' claims to the estate as children of the dece-
      dent and Doralyn Fuglseth,. who at the time of her children's births
      was married to Darrell Fuglseth. The judgment of divorce by which
      the marriage of Doralyn and Darrell Fuglseth was dissolved stated
      that the Fuglseth children had issued from that marriage. Darrell
      Fuglseth's whereabouts were unknown to the Fuglseth children at
      the time they intervened in the probate proceedings concerning the
      decedent's estate. The court, Mark A. Feyen, J., denied the Fuglseth
      children's motion for an evidentiary hearing to establish that the
      decedent, and not Darrell Fuglseth, was their natural father and
      granted summary disposition in favor of Rudolph Quintero, Jr., and
      his sister, Theresa Quintero. The Fuglseth children appealed.

      The Court of Appeals *held*:

      1. Section 111(2) of the Revised Probate Code, MCL 700.111(2);
   MSA 27.5111(2), provides that a married couple to whom a child is
   born or conceived during the marriage is presumed to be the natu-
   ral parents of the child for all purposes of intestate succession.
   Section 111(3), MCL 700.111(3); MSA 27.5111(3), provides that only
   the persons presumed to be the natural parents of a child under
   § 111(2) may disprove the presumption. In this case, the Fuglseth
   children lack standing to disprove the presumption of Darrell Fugl-
   seth's paternity, Darrell Fuglseth is unavailable to disprove his
   paternity, and Doralyn Fuglseth is barred by res judicata arising
   from the judgment of divorce, which states that the Fuglseth chil-
   dren were born of the Fuglseths' marriage, from establishing that
   her children were fathered by the decedent. The probate court
   therefore did not err in denying the Fuglseth children an eviden-

tiary hearing and in granting summary disposition for the Quintero children.

2. The Fuglseth children cannot establish that the decedent is their natural father under § 111(4), MCL 700.111(4); MSA 27.5111 (4), which provides that a man is considered to be the natural father of a child born out of wedlock or born or conceived during a marriage but not the issue of the marriage if the man joins with the child's mother and acknowledges the child as his in writing, the man joins the mother in a written request for correction of the child's birth certificate, the man and the child have borne a mutually acknowledged relationship of parent and child that began before the child turned eighteen years of age and continued until the death of either, or the man has been determined in a paternity action to be the child's father. Section 111(4) applies only to a child born to an unwed mother or to a married couple of which the husband has, in accordance with § 111(3), disproved the paternity that § 111(2) presumes for him. The Fuglseth children cannot avail themselves of § 111(4) in the absence of Darrell Fuglseth's disproof of his paternity.

Affirmed.

DESCENT AND DISTRIBUTION — INTESTATE SUCCESSION — CHILDREN BORN DURING MARRIAGE — PRESUMPTION OF PATERNITY.

A married couple to whom a child is born or conceived during the marriage is presumed to be the natural parents of the child for all purposes of intestate succession; a child whose parentage is presumed in this fashion may not establish that a man who died intestate, and not the child's presumed father, is the child's natural father against whose estate the child can claim under the laws of intestate succession unless the presumed father has disproved his presumed paternity of the child (MCL 700.111[2]-[4]; MSA 27.5111[2]-[4]).

*David Hall & Associates, P.C.* (by *David M. Hall*), for the appellants.

*Coupe & Van Allsburg, P.C.* (by *Raymond J. Pater*), for the appellees.

Before: MURPHY, P.J., and MARKEY and A. A. MONTON*, JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Per Curiam. Intervenors James, Timothy, Tamela, and Robert Fuglseth appeal as of right from the probate court's order denying their motion for an evidentiary hearing to determine whether they are heirs of decedent Rudolph Quintero, Sr. We affirm the probate court's decision to grant respondents Theresa and Rudolph Quintero, Jr., summary disposition pursuant to MCR 2.116(C)(8) and (C)(5) and to deny intervenors' request.

I

The decedent and his wife, Oralia (Lila) Quintero, had two children, Theresa and Rudolph, Jr. Intervenors claim that they are the adult children from an extramarital relationship between the decedent and Doralynn Fuglseth.[1] The decedent and Oralia Quintero apparently divorced at some point after intervenors were born. Doralynn and Darrell Fuglseth divorced in June 1975. Their divorce judgment granted Doralynn custody of intervenors, who were acknowledged in the judgment of divorce as being children of the marriage.[2]

The decedent died intestate on February 21, 1994, with an estate worth approximately $106,500. Rudolph Quintero, Jr., filed a petition to commence probate proceedings in May 1994 and requested independent administration of the estate. Intervenors then filed a petition for court supervision in June 1994, claiming that respondent Rudolph Quintero, Jr., did

---

[1] It is undisputed that intervenors are all children born to Doralynn at a time when she was the wife of Darrell Fuglseth and the decedent was married to Oralia.

[2] Darrell was required to pay child support, for which he was in arrears more than $2,000, and was granted state and federal tax exemptions for the intervenors. Darrell's current whereabouts are unknown.

not recognize their claims to the estate. In July 1994, the parties stipulated an order allowing the probate court to supervise the estate proceedings and terminating the independent probate proceedings. In November 1994, Rudolph Quintero, Jr., was named the personal representative of the decedent's estate.

In March 1995, intervenors filed a petition with the probate court requesting a determination of heirs. Specifically, intervenors sought a determination that they are the illegitimate children of the decedent and, therefore, are entitled to inherit from the decedent's estate. At the April 1995 hearing on the petition, intervenors sought to offer evidence of a mutually acknowledged relationship between intervenors and the decedent.

After hearing the parties' arguments, the probate court, citing the Revised Probate Code's provision regarding legitimacy and illegitimates, MCL 700.111; MSA 27.5111, found that only parents have standing to disprove the presumption of natural parentage of children born during a marriage. Therefore, the probate court found that respondents and the estate were entitled to judgment because Darrell Fuglseth was not present to disprove his presumptive paternity arising from the fact that the intervenors were born during the course of his marriage to Doralynn, and Doralynn was precluded from disproving Darrell's paternity because she is bound by the divorce judgment that named intervenors as her and Darrell Fuglseth's children. The probate court also found that intervenors lacked standing to sue under MCL 700.111; MSA 27.5111 and granted dismissal in favor of respondents under MCR 2.116(C)(8).

II

As their sole issue on appeal, intervenors assert that the probate court erred in granting respondents' summary disposition motion and denying intervenors an evidentiary hearing to establish the decedent's paternity of intervenors through the procedures set forth in MCL 700.111(4); MSA 27.5111(4). We find no error.

Intervenors argue that under § 111 of the Revised Probate Code, MCL 700.111; MSA 27.5111, they should be permitted to offer proof that their mother and the decedent are their biological parents and that they shared a mutually acknowledged relationship with the decedent under § 111(4), despite the presumption of paternity that inures under § 111(2) to a mother's husband at the time her children are born. Respondents counter that intervenors must first overcome the presumption that Darrell Fuglseth is their presumed "natural parent" before being allowed to pursue any of the four means that illegitimate children may use in § 111(4)(a)-(d) to determine the man "considered to be the natural father of that child for all purposes of intestate succession." We agree with respondents.

Section 111 of the Revised Probate Code reads as follows:

(1) For all purposes of intestate succession, a child is the heir of each of his or her natural parents notwithstanding the relationship between the parties except as otherwise provided by section 110.

(2) If a child is born or conceived during a marriage, *both spouses are presumed to be the natural parents of the child for all purposes of intestate succession.* Consent of the husband is presumed unless the contrary is shown by clear and

convincing evidence. If a man and a woman participated in a marriage ceremony in apparent compliance with the law before the birth of a child, even though the attempted marriage is void, the child is considered to be their child for all purposes of intestate succession.

(3) *Only the person presumed to be the natural parent of a child under subsection (2) may disprove any presumption that may be relevant to the relationship*, and this exclusive right to do so terminates upon the death of the presumed parent.

(4) If a child is born out of wedlock or *if a child is born or conceived during a marriage but is not the issue of that marriage*, a man is considered to be the natural father of that child for all purposes of intestate succession if any of the following occurs:

(a) The man joins with the mother of the child and acknowledges that child as his child by completing and filing an acknowledgment of paternity. The man and mother shall each sign the acknowledgment of paternity in the presence of 2 witnesses, who shall also sign the acknowledgment, and in the presence of a judge, clerk of the court, or notary public appointed in this state. The acknowledgment shall be filed at either the time of birth or another time during the child's lifetime with the probate court in the mother's county of residence or, if the mother is not a resident of this state when the acknowledgment is executed, in the county of the child's birth. It is not necessary for the mother of the child to join in the acknowledgment if she is disqualified to act by reason of mental incapacity, death, or any other reason satisfactory to the probate judge of the county in which the acknowledgment may be recorded.

(b) The man joins with the mother in a written request for a correction of certificate of birth pertaining to the child that results in issuance of a substituted certificate recording the birth of the child.

(c) The man and the child have borne a mutually acknowledged relationship of parent and child that began before the child became age 18 and continued until terminated by the death of either.

(d) The man has been determined to be the father of the child and an order of filiation establishing that paternity has been entered pursuant to the paternity act, Act No. 205 of the Public Acts of 1956, being sections 722.711 to 722.730 of the Michigan Compiled Laws.

\* \* \*

(6) If a person is considered or presumed by a provision of this section, not including subsection (7), to be the natural parent of a child born out of wedlock or a child born or conceived during a marriage but not the issue of that marriage, that child shall bear the same relationship to that person as a child born or conceived during a marriage for all other purposes and shall have the identical status, rights, and duties of a child born in lawful wedlock effective from birth.

(7) The biological father of a child who is born out of wedlock, or who is born or conceived during a marriage but is not the issue of that marriage, shall be considered to be the natural father of that child for the purpose of intestate succession from the father to the child only. This subsection does not extinguish a child's right to inherit from another person considered to be the child's natural or legal father under another provision of law. This subsection does not apply to a child who is adopted by another man before the date of death of the child's biological father.

\* \* \*

(9) An acknowledgment of paternity executed as provided in this section is presumed to establish paternity for all purposes. The acknowledgement [sic] may be set aside by the circuit court in the county where it is filed only if the man is proven not to be the father by clear and convincing evidence.[3] [Emphasis added.]

---

[3] MCL 700.111; MSA 27.5111, as set forth herein, is taken from 1994 PA 387, § 1, effective December 29, 1994, and 1996 PA 8, § 1, effective June 1, 1996. Effective June 1, 1997, portions of the text changed, pursuant to 1996 PA 306, § 1. Specifically, § 4(a) now reads:

On appeal, we must determine whether disproving the presumption established in § 111(2) is a threshold requirement to proving paternity pursuant to § 111(4). We find that because of the presumption of paternity, intervenors lack standing to disprove the paternity of their presumed parents, and Doralynn Fuglseth is precluded by her judgment of divorce, which has res judicata effect with respect to the presumption of paternity by Darrell Fuglseth, from overcoming the presumption that Darrell Fuglseth is the intervenors' father.

A

We find that the probate court did not err in refusing to permit intervenors an opportunity to present evidence to establish that the decedent was their biological father in light of their lack of standing, as a result of the res judicata effect afforded the Fuglseth's June 30, 1975, judgment of divorce. *In re Cook Estate*, 155 Mich App 604, 610; 400 NW2d 695 (1986). Res judicata bars a litigant from relitigating a claim when the former action was decided on the merits or the matter could have been decided in the first action and where the two actions are between the same parties or those in privity with the parties. *In re Cook Estate, supra* at 608-609; *Admiral Merchants Motor Freight, Inc v Dep't of Labor*, 149 Mich App 344, 350; 386 NW2d 193 (1986). This Court recently addressed

---

The man joins with the mother of the child and acknowledges that child as his child by completing an acknowledgment of parentage as prescribed in the acknowledgment of parentage act.

Also, § 4(d) now reads that the order of filiation is to be entered "as provided in" the paternity act, not entered "pursuant to" the act. Finally, § 8 and § 9 have been stricken from the statute.

the issue of how res judicata affects an order of filiation and divorce judgment in *Hawkins v Murphy*, 222 Mich App 664, 670-671; 565 NW2d 674 (1997), where the trial court improperly suspended the defendant's visitation rights and support obligations under the parties' divorce judgment after the plaintiff subsequently admitted, and blood tests proved, that the defendant was not the child's father. In reversing the decision of the trial court, this Court made the following observations that are applicable to the case at bar:

> The trial court should not have permitted the issue of paternity to be raised when the parties had had a full and fair opportunity to litigate the issue in the paternity and divorce proceedings. *Under the broad application of res judicata which Michigan courts employ, the parties cannot raise the issue of paternity if it has already been conclusively determined in a prior adjudication. Hackley v Hackley*, 426 Mich 582, 585 (BOYLE, J.), 599 (BRICKLEY, J.); 395 NW2d 906 (1986).
>
> In this case, the court specifically adjudged defendant to be Patrick's father through an order of filiation entered in a paternity action. The parties' judgment of divorce referred to Patrick as their child and established defendant's duty of support. Plaintiff brought motions in April of 1993 to vacate the order of filiation and amend the judgment of divorce before the trial court, both of which were denied; no appeal was taken. *Consequently, there can be no dispute that the order of filiation and the judgment of divorce are final judgments entitled to preclusive effect under the doctrine of res judicata.* [*Hawkins, supra* at 671 (emphasis added).]

For these same reasons we find that the Fuglseths' judgment of divorce is a final judgment entitled to preclusive effect under the doctrine of res judicata with respect to Darrell and Doralynn Fuglseth's status as the presumed parents of the intervenors under

§ 111(2), because the judgment states that intervenors are the "minor children of the parties" and it was stipulated that intervenors were born during Darrell and Doralynn's marriage. Intervenors are not bound by the determination of paternity contained in the divorce judgment because they were not in privity with their parents at the time of the 1975 divorce. See *In re Cook Estate, supra* at 610. Nevertheless, the doctrine of res judicata has a critical effect on this case: it precludes Doralynn Fuglseth from rebutting the presumption of parentage under § 111(3) of the Revised Probate Code. Indeed, "[o]nly the person presumed to be the natural parent of a child under subsection (2) may disprove any presumption that may be relevant to the relationship . . . ." Thus, Doralynn Fuglseth is precluded from challenging Darrell Fuglseth's paternity almost twenty years after entry of the divorce judgment, regardless of whether Darrell's whereabouts are currently known or whether he fulfilled his child support obligations. *Hawkins, supra.* We find nothing in the Revised Probate Code that permits children born during a marriage to establish that they were not issue of the marriage absent any supporting evidence from their presumed mother, presumed father, *or* putative father. Because the issue of paternity has been "conclusively determined in a prior adjudication," thereby barring Doralynn Fuglseth from denying Darrell Fuglseth's paternity over intervenors, intervenors have no standing to rebut Darrell's presumed paternity under § 111(3). Thus, the probate court properly granted summary disposition to respondents. *Id.*

B

Even assuming that res judicata does not apply in this case, we believe that respondents' interpretation of § 111 gives effect to the legislative intent underlying this portion of the Revised Probate Code and precludes intervenors from establishing that the decedent was their biological father.

In reviewing de novo the grant of a motion for summary disposition under MCR 2.116(C)(8), we look to the pleadings, accept as true all factual allegations and their reasonable inferences, and uphold the grant where no factual development could possibly justify a right of recovery. *State Treasurer v Schuster*, 215 Mich App 347, 350; 547 NW2d 332 (1996); *ETT Ambulance Service Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395-396; 516 NW2d 498 (1994). Under MCR 2.116(C)(5), summary disposition is merited when the plaintiffs lack the capacity to sue. In reviewing these motions, this Court must consider the parties' pleadings, depositions, admissions, affidavits, and other documentary evidence to determine whether the defendant is entitled to judgment as a matter of law. *Wortelboer v Benzie Co*, 212 Mich App 208, 213; 537 NW2d 603 (1995).

When reviewing statutes, our primary goal is to ascertain and give effect to the Legislature's intent, and the Legislature is presumed to have intended the meaning it plainly expressed. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993); *McCready v Hoffius*, 222 Mich App 210, 214-215; 564 NW2d 493 (1997); *VanGessel v Lakewood Public Schools*, 220 Mich App 37, 40-41; 558 NW2d 248 (1996). The rules of statutory construction merely guide us in determining intent with a greater degree

of certainty. *Nolan v Dep't of Licensing & Regulation*, 151 Mich App 641, 648; 391 NW2d 424 (1986). Where reasonable minds can differ concerning the meaning of a statute, only then is judicial construction appropriate; otherwise, judicial construction is neither necessary nor permitted when the plain and ordinary meaning of the statute is clear. *VanGessel, supra; Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). We must look to the object of the statute and the harm that it was designed to remedy and apply a reasonable construction, aided by common sense, in order to accomplish the purpose of the statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994); *VanGessel, supra*. Critically, we must read the particular provisions of the statute in the context of the entire statute to produce an harmonious whole, *VanGessel, supra* at 41, and give the statutory language a valid and reasonable construction that not only reconciles inconsistencies but also gives effect to all its parts, *Wright v Vos Steel Co*, 205 Mich App 679, 684; 517 NW2d 880 (1994).

Contrary to intervenors' assertions on appeal, we believe that no subsection of § 111 can be read without reference to the others. To read each separately would inevitably lead to disharmony within § 111. *VanGessel, supra; In re Vellenga Estate*, 120 Mich App 699, 702-703; 327 NW2d 340 (1982). Relying on the plain language of § 111, we believe that intervenors are precluded from challenging the presumption that Darrell Fuglseth is their father and lack standing to file a claim on the decedent's estate under the Revised Probate Code.

The clear language of § 111(4)(a) through (d) reveals a logical progression of legal assumptions about parents and their children, beginning with the initial assumption that children are the heirs of their natural parents, who are presumed to be the married mother and father at the time the children are conceived or born, and leading to children inheriting from another man after the "presumed" parent disproves his paternity. Interpreting § 111(1) through (4) as an harmonious whole reveals that the subsections are arranged in a logical and methodical sequence ranging from "natural" parent, "presumed" parent, "considered" parent, to "biological" parent. Subsection 1 provides the general rule for intestate succession to a child who is the heir of the child's "natural" parents. Where it is unclear who the natural parent is, subsection 2 provides the presumption that a child born or conceived during the marriage is a child of those married persons. Subsection 3 then states who is allowed to disprove this presumption. Finally, where no natural or presumed parent exists, subsection 4 provides avenues to establish who should be "considered" the parent. A traditional preference for respecting the presumed legitimacy of a child born during a marriage underlies subsections 1 through 4. See *Girard v Wagenmaker*, 437 Mich 231, 246; 470 NW2d 372 (1991).

Indeed, the plain and ordinary language of § 111(4) applies to the situation where a child's "presumed" father has overcome the presumption of paternity. Clearly, any child born during a marriage is not subject to § 111(4) *unless* this presumption has been disproved. Moreover, we would be unable to protect the legal and moral sanctity of marriage and the presump-

tion of legitimacy if we were to permit third parties to allege that a child is the product of his mother's adultery. Indeed,

> the mischief these provisions were intended to obviate is the situation where deceitful claims are made against an estate by individuals posing as the decedent's long-lost children. These provisions guard against such specious claims by requiring that the father make some acknowledgment, during his lifetime, that the claimant is his child. [*In re Spencer Estate*, 147 Mich App 626, 631; 383 NW2d 266 (1985).]

Intervenors present no case law or statutory authority supporting the proposition that persons other than the presumed father may challenge the legitimacy or parentage of children born during a marriage, and we can find no such authority. See, e.g., *In re Claim of Turner*, 209 Mich App 66, 69; 530 NW2d 487 (1995).

Even assuming that intervenors could establish that they had no presumed father, which they cannot, subsections 4(a) through (d) all require the "man" who seeks to be considered as the natural father to either obtain an order of filiation under the Paternity Act, join with the mother in either acknowledging paternity or filing a written request to correct the birth certificate, or join with the child to mutually acknowledge the relationship of parent and child. See *In re Vellenga Estate*, *supra* at 702 ("mutual" acknowledgment requires action by both sides). Without the alleged father who would be "considered" the natural parent, it would be difficult, if not impossible, to satisfy the requirements of subsection 4.[4] See *In re*

---

[4] We note a reference in intervenors' brief to the probate court to a will that the decedent purportedly asked his attorney to draft but that was

*Jones Estate,* 207 Mich App 544, 552; 525 NW2d 493 (1994). Because Doralynn Fuglseth is precluded by the res judicata effect of the divorce judgment from presenting proofs that Darrell Fuglseth is not intervenors' presumed father and, even if she could, because the decedent could not present proofs under § 111(4), we believe that the intervenors cannot establish their right to inheritance from the decedent.

We also find direction from our Supreme Court in *Girard, supra* at 235, where the Court determined that "the Legislature did not express an intention to grant a putative father standing to establish the paternity of a child born while the mother was legally married to another man without a prior determination that the mother's husband is not the father" under §§ 1(a) and 4(6) of the Paternity Act, MCL 722.711(a); MSA 25.491(a), MCL 722.714(6); MSA 25.494(6)[5] or

---

never executed. According to the brief, the will recognizes respondents and intervenors as his biological children. No one raises this point on appeal, and we will not determine whether, assuming intervenors could prove they were not the issue of the Fuglseths' marriage, this document would satisfy § 111(4)(c) because the assumption cannot be proved.

[5] Section 11(a) of the Paternity Act states:

"Child born out of wedlock" means a child begotten and born to a woman who was not married from the conception to the date of birth of the child, or a child which the court has determined to be a child born or conceived during a marriage but not the issue of that marriage. [MCL 722.711(a); MSA 25.491(a).]

Section 4(6) of the Paternity Act, as cited in *Girard,* provides in pertinent part:

The father or putative father of a child born out of wedlock may file a complaint in the circuit court in the county in which the child or mother resides or is found, praying for the entry of the order of filiation as provided for in section 7. . . . [MCL 722.714(6); MSA 25.494(6).]

The *Girard* Court determined that before a putative father can file a proper complaint in the circuit court to establish paternity, "a circuit

under the Child Custody Act. As our Supreme Court observed in *Girard, supra* at 250:

> We do not denigrate the dissent's genuine and thoughtful concerns over the moral dilemma between the paternal needs of the biological father and those of the presumptively legitimate child. We only find that the Legislature has made its choice and the answer to the dissent's concerns will have to come from that body.
>
> . . . The Legislature has for 182 years now chosen to protect [the] "sanctity" [of the marital family], and that choice prompts its preference to *avoid a challenge to a presumed legitimate birth until a prior determination rebuts legitimacy and threatens the child's support by exposing the fact that the presumed father is not the biological father.* [Emphasis added.]

We recognize that the purposes of the Paternity and the Child Custody Acts[6] differ from the purpose of the Probate Code, which is to justly, accurately, and efficiently facilitate the disposition of decedents' estates. *In re Jones Estate, supra* at 551. Nevertheless, the same reasoning in *Girard* supports protecting the sanctity of the presumed father's parentage of the children born to him and his wife during their

---

court must have made a determination that the child was not the issue of the *marriage at the time of filing the complaint.*" [Emphasis in original.] Because the plaintiff/putative father could not satisfy this requirement under MCL 722.711(a); MSA 25.491(a), and the plaintiff therefore could not establish that he was the father of a child born out of wedlock under MCL 722.714; MSA 25.494, he was barred from filing the complaint for paternity and had no standing under the Paternity Act. *Girard, supra* at 242-243.

[6] Given that children are precluded by § 4 of the Paternity Act from commencing an action to determine the children's parentage or the parent's support obligations, *Spada v Pauley,* 149 Mich App 196, 200; 385 NW2d 746 (1986), we find it consistent that children are also precluded from challenging the status of their presumed parents under the Revised Probate Code.

marriage. Although this result requires the exclusion of possibly conclusive evidence that someone other than the presumed parent is the biological father, where the presumed father does not first disprove paternity, our interpretation of § 111 is consistent with the express public policy of this state to preserve the sanctity of marriage. This necessarily includes preserving the family unit and protecting the legitimacy of children born during that marriage. We find no overriding policy reasons to ignore the presumed father's rights (and attendant obligations) merely because the presumed father is no longer actively involved in his children's lives or because the children's mother eventually confesses that another now-deceased man fathered her children during an adulterous relationship.

Moreover, we find *Girard* useful in interpreting the language that intervenors rely upon in § 111(4) that if

> a child is born out of wedlock or if a child is born or conceived during a marriage but is not the issue of that marriage, a man is considered to be the natural father of that child for all purposes of intestate succession if any of the following occurs . . . .

MCL 722.711(a); MSA 25.491(a) defines a child born out of wedlock to include both "a child begotten and born to a woman who was not married from the conception to the date of birth of the child, *or* a child *which the court has determined* to be a child born or conceived during a marriage but not the issue of that marriage" (emphasis added). Section 111(4) does not similarly require a prior judicial determination that a child is not the biological child of the presumed parent, *Girard, supra.* Nevertheless, it is illogical to con-

clude that the Legislature would require a judicial determination that a child is not the issue of the marriage before the putative father may file a complaint under the Paternity Act yet permit anyone at any time to challenge the presumed parent's paternity in order to establish inheritance rights under the Revised Probate Code. Rather, the plain language of § 111(4) supports our conclusion that the presumption of paternity contained in § 111(3) has *already* been disproved or overcome before § 111(4) applies. This prerequisite necessarily exists because the presumption of parentage attaches at the moment of conception or birth, depending upon when the mother marries. Any other conclusion would render illusory the protection of the presumption that § 111(3) affords to children born during a marriage. We will avoid statutory constructions that render a statute, or any part of it, surplusage or nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992).

Indeed, what intervenors are attempting to do here is to produce evidence of a mutually acknowledged relationship under § 111(4)(c) *in order to disprove the presumption* that Darrell Fuglseth is their biological father and to establish that the decedent is in fact their biological father. We find no indication in either the language of the statute or the legislative history that would permit such tactics. Intervenors are placing the proverbial cart before the horse by arguing that they should be permitted to present evidence under § 111(4)(c) in order to show that they are entitled to the relief afforded in § 111(4) to children "born or conceived during a marriage but . . . not the issue of that marriage." We cannot condone this proposed misapplication of § 111. Intervenors must first show

that they were not the issue of Darrell and Doralynn Fuglseth's marriage *before* they may establish that anyone other than Darrell Fuglseth is their father. Because (a) Doralynn Fuglseth is precluded from making this showing, (b) Darrell Fuglseth has not disproved his paternity of intervenors under § 111(3), and (c) intervenors have no independent standing to disprove the presumption of parentage under § 111(3), intervenors may not avail themselves of § 111(4). In short, the Revised Probate Code properly views intervenors as the children of their presumed parents, Darrell and Doralynn Fuglseth.

For these reasons, we believe that subsections 2, 3, and 4 must be read harmoniously, so that once the presumption of § 111(2) attaches, only the presumed parents can challenge the parentage of children born during a marriage under § 111(3). Thus, § 111(4) applies only to children born to a single, unwed mother, see *In re Spencer Estate, supra* at 629-632, or unprotected children, i.e., children whose presumed parent has disproved the presumption of parentage.[7]

Accordingly, we find that the probate court did not err in granting respondents' motions for summary disposition and denying intervenors an evidentiary hearing to establish the paternity of the decedent through MCL 700.111(4); MSA 27.5111(4) because the Fuglseths' 1975 divorce judgment has res judicata effect and precludes Doralynn Fuglseth from denying or relitigating Darrell Fuglseth's paternity of the inter-

---

[7] Notably, the requirements set forth in § 111(4) are intended "to ensure the accurate resolution of claims of paternity and to minimize the potential for disruption of estate administration," in keeping with the state's substantial interests in preventing spurious claims made against an estate. *In re Jones Estate, supra* at 552.

venors. Even assuming res judicata does not apply, the presumption of paternity established in MCL 700.111(2); MSA 27.5111(2) exists in favor of Darrell Fuglseth. It must be disproved before § 111(4) can be used to establish paternity, but it has not been nor can it be disproved in the case at bar. Further, intervenors lack standing under MCL 700.111(3); MSA 27.5111(3) to disprove the paternity of their presumed parent.

Affirmed.