*421
 
 Markey, J.
 

 Plaintiffs appeal by leave granted the trial court’s order denying plaintiffs’ and defendants’ motions for summary disposition. Plaintiffs’ action seeks a declaration that the intergovernmental transfers of functions and responsibilities act (itfra), MCL 124.531
 
 el seq.,
 
 required defendants in determining tenure eligibility to recognize and credit plaintiffs’ service as teachers with an adult education consortium of which defendants were members, but not the fiscal agent. We affirm in part, reverse in part, and remand.
 

 I. FACTS AND PROCEDURAL HISTORY
 

 The parties have submitted stipulated facts. Plaintiffs’ complaint alleged, and defendants admitted, that before the 1998-99 school year, defendants belonged to a decentralized adult education consortium with other school districts for which Willow Run Community Schools served as fiscal agent. Defendants denied plaintiffs’ allegations that defendants had administrative responsibility or authority to hire or discipline consortium employees. The parties, however, stipulated that defendants, as a “home district,” had some administrative responsibilities for the adult education program operated within defendants’ jurisdiction, including interviewing and recommending employees, determining seniority of consortium employees, developing the program, evaluating the staff, and participating in the grievance process. At the end of the 1997- 98 school year, defendants discontinued their association with the consortium but began to independently operate an adult education program within the district commencing with the 1998-99 school year.
 

 Before defendants hired them as teachers for the 1998- 99 school year, each plaintiff had varying years
 
 *422
 
 of service as teachers employed by the consortium working within defendants’ district. Defendants admitted that they hired plaintiffs as teachers for the 1998-99 school year and claimed a lack of sufficient knowledge to either admit or deny plaintiffs’ previous service as teachers, which served as a denial, MCR 2.111(C)(3). Defendants, however, acknowledged in the parties’ stipulation of facts that plaintiffs served as teachers who were employed by the consortium and worked within defendants’ “home district.”
 

 Plaintiffs requested that defendants credit plaintiffs’ service with the consortium toward the period of service with defendants required to achieve tenure under the teachers’ tenure act (tta), MCL 38.71
 
 et seq.
 
 Plaintiffs alleged that the itfra, specifically MCL 124.534(d)(ii), required defendants to recognize plaintiffs’ service with the consortium toward completion of the probationary period necessary to achieve tenure with defendants. Defendants refused, asserting that plaintiffs were required to serve a new four-year probationary period according to MCL 38.81.
 

 After filing a lawsuit, plaintiffs moved for summary disposition pursuant to MCR 2.116(C)(9) (the opposing party has failed to state a valid defense to the claim asserted against it). Defendants answered that the trial court should enter judgment in their favor pursuant to MCR 2.116(I)(2) (the court may render judgment in favor of the nonmoving party if it appears the nonmoving party is so entitled).
 
 [1]
 
 The trial
 
 *423
 
 court found that neither the itfra nor the tta “specifically dictate the result in this case.” The trial court reasoned that an employee “benefit” under MCL 124.534(d)(ii) did not include tenure under the rule of statutory construction that the express mention of one thing generally implies the exclusion of other things. Further, the trial court reasoned that even if tenure were included in the benefits contemplated by the itfra, MCL 124.534(d) (ii) did not specifically provide for achieving tenure in a consortium as did MCL 38.91(3) of the tta.
 

 On the other hand, the trial court noted that the TTA did not cover the instant situation where “a probationary period is interrupted by a transfer to a different district.” The trial court referred to the case of
 
 Sara Mayman v Ann Arbor Bd of Ed,
 
 opinion of the State Tenure Commission (Docket No. 98-44, November 8, 1999), for the proposition that the tta does not dictate the length of probation when there are “simultaneous employing boards” as in the present case and
 
 *424
 
 reasoned that MCL 38.91(3) requires that a teacher’s probationary service in a consortium be applied to only one district (the fiscal agent, absent a written agreement between the teacher and another district) only where the teacher satisfactorily completes probation. The trial court further applied a rule of “fairness” and found that extending plaintiffs’ probationary period beyond four years from their date of hire (with the consortium) would contravene the tta, specifically MCL 38.81 (which requires a four-year probationary period to achieve tenure).
 

 The trial court, having in essence found in favor of each side in this case, denied summary disposition to both and required “the parties to employ the services of a facilitator to assist in resolution of this dispute . . . .” The trial court further encouraged the parties, especially defendants, to seek advisory opinions from the State Tenure Commission or the Office of the Attorney General to help determine the length of plaintiffs’ probationary period (to achieve tenure). Thereafter, this Court granted plaintiffs’ application for leave to appeal.
 

 n. analysis
 

 Plaintiffs argue that school districts are included within the definition of “political subdivision” covered by the itfra, which requires that an employee acquired in the “transfer” of a governmental program is not to suffer adverse employment consequences regarding “workmen’s compensation, pension, seniority, wages, sick leave, vacation, health and welfare insurance or any other benefits . . . .” MCL 124.534(d)(ii). Plaintiffs claim that their satisfactory service as probationary teachers employed by a con
 
 *425
 
 sortium, with Willow Run as fiscal agent and defendants as a member district, is a benefit that must transfer with them when defendants hired them to continue teaching in the adult education program. Plaintiffs assert that they will be denied the protection of the tta and be required to serve a period of probation longer than required by the tta (i.e., four years) because defendants refuse to credit plaintiffs’ service with the consortium toward the period of probation required to achieve tenure. We conclude that the trial court properly denied plaintiffs’ motion for summary disposition, albeit for the wrong reasons, because a “transfer” of governmental functions or responsibilities did not occur in this case. For the same reason, the trial court erred in not granting defendants’ motion for judgment pursuant to MCR 2.116(0(2)-
 

 This Court reviews de novo the trial court’s grant or denial of a motion for summary disposition.
 
 Schulz v Northville Public Schools,
 
 247 Mich App 178, 182; 635 NW2d 508 (2001). When deciding a motion under MCR 2.116(C)(9), which tests the sufficiency of a defendant’s pleadings, the trial court must accept as true all well-pleaded allegations and properly grants summary disposition where a defendant fails to plead a valid defense to a claim.
 
 Village of Dimondale v Grable,
 
 240 Mich App 553, 564; 618 NW2d 23 (2000). The parties’ “stipulation of facts” is not a “pleading.” Pleadings include only complaints, cross-claims, counterclaims, third-party complaints, answers to any of these, and replies to answers.
 
 Id.
 
 at 565; MCR 2.110(A). Summary disposition under MCR 2.116(C)(9) is proper when the defendant’s pleadings are so clearly untenable that as a matter of law no
 
 *426
 
 factual development could possibly deny the plaintiffs right to recovery.
 
 Alcona Co v Wolverine Environmental Production, Inc,
 
 233 Mich App 238, 245-246; 590 NW2d 586 (1998). Statutory interpretation is a question of law also reviewed de novo on appeal.
 
 Id.
 
 at 246.
 

 Subsection 4(d) of the itfra, MCL 124.534(d), requires that a contract to transfer a function or responsibility shall include:
 

 (d) The maimer in which the affected employees, if any, of the participating political subdivisions shall be transferred, reassigned or otherwise treated subject to the following:
 

 (i) Such employees as are necessary for the operation thereof shall be transferred to and appointed as employees subject to all rights and benefits. These employees shall be given seniority credits and sick leave, vacation, insurance and pension credits in accordance with the records or labor agreements from the acquired system. Members and beneficiaries of any pension or retirement system or other benefits established by the acquired system shall continue to have rights, privileges, benefits, obligations and status with respect to such established system. The political subdivision to which the functions or responsibilities have been transferred shall assume the obligations of any system acquired by it with regard to wages, salaries, hours, working conditions, sick leave, health and welfare and pension or retirement provisions for employees. If the employees of an acquired system were not guaranteed sick leave, health and welfare and pension or retirement pay based on seniority, the political subdivision shall not be required to provide these benefits retroactively.
 

 (ii) No employee who is transferred to a position with the political subdivision shall by reason of such transfer be placed in any worse position with respect to workmen’s compensation, pension, seniority, wages, sick leave, vacation, health and welfare insurance or any other benefits that he enjoyed as an employee of such acquired system.
 

 
 *427
 
 In response to plaintiffs’ argument, defendants argue persuasively that the more recent and specific provisions of the tta govern; consequently, plaintiffs’ service with the consortium could be credited only toward earning tenure with the fiscal agent of the consortium, absent a specific contract to the contrary, which is not present in the instant case. Specifically, defendants argue that MCL 38.91(3) controls. Subsection 1(3) provides:
 

 If a teacher employed in a program operated by a consortium of school districts was not previously on continuing tenure in a school district that participates in the consortium and satisfactorily completes the probationary period, the teacher shall be considered to be on continuing tenure only in the school district that is the fiscal agent for the consortium. However, if there is a written agreement between the teacher and another participating school district that provides that the teacher will have continuing tenure in that school district, the teacher shall be considered to be on continuing tenure only in that school district and shall not be considered to be on continuing tenure in the school district that is the fiscal agent for the consortium.
 

 Plaintiffs’ claim is based on the premise that the ITFRA applies to the facts of this case. Plaintiffs and defendants do not dispute the basic facts. Defendants hired plaintiffs to continue teaching in the adult education program formerly operated by the consortium. However, plaintiffs’ complaint does not allege a written contract effecting a transfer of the adult education program. A copy of a “memorandum of agreement” between Willow Run and defendant Ann Arbor Public Schools is attached to plaintiffs’ complaint (and the parties’ stipulation of facts) as an exhibit. An exhibit attached or referred to in a pleading becomes “a part of the pleading for all purposes.” MCR
 
 *428
 
 2.113(F)(2). The memorandum provides that the adult education consortium operated within the two school districts would end after the 1997-98 school year, but that defendants would continue to operate an adult education program to meet the needs of its community. The memorandum also provides that defendants will hire, on or before July 1, 1998, all consortium employees who worked at defendants’ work site and that defendants will assume full responsibility for any unemployment benefits to which such employees may become entitled.
 

 Because defendants dispute plaintiffs’ legal conclusion that credit toward tenure must be awarded to plaintiffs and dispute the assertion that a transfer of functions within the meaning of the itfra occurred when the consortium dissolved, this Court must construe the statutes. Where reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate.
 
 Adrian School Dist v Michigan Public School Employees’ Retirement System,
 
 458 Mich 326, 332; 582 NW2d 767 (1998). The primary goal in construing a statute is to ascertain and effectuate the intent of the Legislature.
 
 Alcona Co, supra
 
 at 246;
 
 VanGessel v Lakewood Public Schools,
 
 220 Mich App 37, 40; 558 NW2d 248 (1996). The first step in determining the intent of the Legislature is to review the specific wording of the statute itself.
 
 In re MCI Telecommunications Complaint,
 
 460 Mich 396, 411; 596 NW2d 164 (1999);
 
 Alcona Co, supra
 
 at 246. Where the plain and ordinary meaning of the language of the statute is clear and unambiguous, no further interpretation is necessary.
 
 VanGessel, supra
 
 at 40. In this regard, every word or phrase of a statute should be accorded its plain and ordinary meaning.
 
 *429
 
 MCL 8.3a;
 
 Western Michigan Univ Bd of Control v Michigan,
 
 455 Mich 531, 539; 565 NW2d 828 (1997). Likewise, parts of a statute should be construed together in the context of the whole statute, bearing in mind the purpose of the Legislature, to arrive at an harmonious whole.
 
 VanGessel, supra
 
 at 41. We have found no published cases that provide guidance in interpreting the itfra.
 

 The title of the itfra and its preamble, “an act to provide for intergovernmental transfers of functions and responsibilities,” both clearly express the purpose and limit the scope of the statute, which is to allow and regulate transfers of “functions and responsibilities” between governments.
 
 Malcolm v East Detroit,
 
 437 Mich 132, 143; 468 NW2d 479 (1991);
 
 Knight v Limbert,
 
 170 Mich App 410, 414; 427 NW2d 637 (1988). Consistent with the title and preamble, § 2 of the itfra, MCL 124.532, provides that “[t]wo or more political subdivisions are authorized to enter into a contract with each other providing for the transfer of functions or responsibilities to one another or any combination thereof upon the consent of each political subdivision involved.” The itfra thus contemplates that a power, right, or ability of at least one governmental unit to perform a function or responsibility can be transferred to at least one other governmental unit that previously did not possess the power, right, or ability to perfomi the transferred function or responsibility within the jurisdiction of the transferring unit (otherwise, why contract to transfer the function or responsibility).
 

 Plaintiffs contend that the adult education program operated within defendants’ district was the “function or responsibility” transferred in this case. The ques
 
 *430
 
 tion facing this Court is whether the “memorandum of agreement” between Willow Rim and defendants is a contract that transfers a “function or responsibility” within the meaning of the itfra. The memorandum states that “Ann Arbor Public Schools will continue to operate an adult education program in the future to meet the needs of its community.” The memorandum does not, however, otherwise satisfy the requirements of the ITFRA: it lacks a provision for financing defendants’ future adult education program, MCL 124.534(f), provides no “term of operation,” MCL 124.534(c), or other legal, financial, and administrative arrangements required to effectuate the undertaking, MCL 124.534(g). Therefore, the memorandum of agreement simply does not contain terms expressly required by the itfra, regardless of whether it complied with the formal procedural requirements of MCL 124.533.
 

 Moreover, the memorandum of agreement did not transfer a function or responsibility of Willow Rim or the consortium to defendants for several reasons. First, Willow Run, without a grant of authority from defendants, does not independently possess the power or authority to operate an adult education program within defendants’ geographic boundaries and therefore could not transfer such a “function or responsibility” to defendants. Second, because defendants at all times, had the authority to operate an adult education program in its own right within its own district, MCL 380.11a(3)(a), no transfer of that “function or responsibility” was necessary. Finally, it is unreasonable to construe defendants’ withdrawal of consent from the consortium to operate adult edu
 
 *431
 
 cation programs within defendants’ district as a “transfer” within the meaning of the itfra.
 

 The itfra, however, does provide for the termination of a contract involving the transfer of functions or responsibilities, most of which have existed to establish the consortium. It is fair and reasonable to interpret the memorandum of agreement in this case as a termination of the prior transfer. MCL 124.536. The memorandum of agreement is simply a division of the residual revenues of the consortium (state aid) and an assignment of the residual liabilities of the consortium (unemployment compensation for affected teachers if not hired by defendants for their own program). Thus, no transfer of a “function or responsibility” as contemplated by the ITFRA, i.e., the adult education program, occurred. Because no transfer within the meaning of the statute occurred, MCL 124.534(d) does not apply on the facts of this case to plaintiffs.
 

 Although we found no published cases in Michigan interpreting the ITFRA, an unpublished decision by this Court analyzed an analogous situation similarly and supports our conclusion that no transfer occurred under the itfra. In
 
 Hemstreet v Grand Rapids,
 
 unpublished opinion per curiam of the Court of Appeals, issued April 10, 1998 (Docket No. 202424), the plaintiffs were prison security officers employed by the police department of the city of Grand Rapids who were terminated when the city police stopped housing arrested persons in a city-operated lockup and instead utilized the jail operated by Kent County. The county subsequently hired a number of new corrections officers equal to or greater in number than the discharged plaintiffs.
 
 Id.
 
 The plaintiffs brought a
 
 *432
 
 wrongful discharge suit against the city, county, and sheriffs department when they were not transferred to or hired as county jail guards, alleging a violation of MCL 124.534(d). This Court disagreed that a “transfer” within the meaning of the ITFRA occurred:
 

 As explained below, although defendant city undertook the maintenance of a jail or lockup before July 1, 1993, it did not “transfer” that function, as envisioned by § 2 of the ITFRA, MCL 124.532; MSA 5.4087(2), because defendant Kent County was statutorily required to perform this same function, and, in fact did so. Subsequently [sic], plaintiffs do not fall within the class of “affected employees” identified in MCL 124.534(d); MSA 5.4087(4)(d).
 

 More explicitly, this Court held:
 

 Without a transfer of functions as contemplated by the ITFRA, defendants were not required to enter a contract with defendant Kent County before the county could house individuals arrested by defendant city’s police department. Likewise, in the absence of a transferred function, plaintiffs do not qualify as “affected employees” and are not entitled to the protections afforded by the itfra.
 

 Although
 
 Hemstreet, supra,
 
 is an unpublished opinion and has no binding precedential effect under the rule of stare decisis, MCR 7.215(C)(1), its reasoning is persuasive, and it is a reasonable construction of the statute. A transfer of a “function or responsibility” within the meaning of the itfra does not occur when one unit of government begins (or as in
 
 Hemstreet, supra,
 
 increases) a “function or responsibility” where that unit of government already possessed the authority to perform the “function or responsibility” in question. Without a transfer within the meaning of the
 
 *433
 
 itfra, the employee protections of MCL 124.543(d) do not apply.
 

 Moreover, even if a transfer within the meaning of the itfra occurred in this case, defendants’ statutory construction argument that teacher tenure does not come within the meaning of “benefit” found in MCL 124.534(d)(ii) is persuasive. As the State Tenure Commission noted when addressing this same issue in
 
 Mayman, supra
 
 at 7-8, the Legislature has specifically listed tenure as an entitlement that follows the transfer of special education personnel from one district to another, MCL 388.1651a(10), but it has not expressly included tenure as a named benefit in MCL 124.534(d)(ii). The State Tenure Commission, in reaching its conclusion that tenure was not included within the meaning of “benefit” in MCL 124.534(d)(ii), correctly stated in
 
 Mayman, supra
 
 at 7-8, that the express mention of one thing in a statute implies the exclusion of other similar things,
 
 expressio unius est exclusio alterius.” Bradley v Saranac Community Schools Bd of Ed,
 
 455 Mich 285, 298; 565 NW2d 650 (1997). Thus, although earned probationary service resulting in tenure must transfer with special education personnel, the same is not true for other personnel because of that rule. Furthermore, while an administrative agency’s construction of a statute is not controlling and cannot overcome the plain meaning of a statute, it is generally entitled to deference.
 
 Western Michigan Univ Bd of Control, supra
 
 at 544.
 

 Another doctrine of statutory construction, ejusdem generis, provides that if a law contains general words that follow a designation of particular subjects, those general words are presumed to include only things of the same kind, class, character, or nature as
 
 *434
 
 the subjects enumerated.
 
 Sands Appliance Services, Inc v Wilson,
 
 463 Mich 231, 242; 615 NW2d 241 (2000), quoting
 
 People v Brown,
 
 406 Mich 215, 221; 277 NW2d 155 (1979);
 
 Belanger v Warren Consol School Dist, Bd of Ed,
 
 432 Mich 575, 583; 443 NW2d 372 (1989). The items listed in MCL 124.534(d)(ii), including wages, sick leave, vacation, health insurance, and pension, are all types of traditional employment compensation, and are often the subjects of collective bargaining. Tenure under the tta, however, is an extraordinary statutory right that only teachers, out of all government employees, enjoy. If a teacher has acquired tenure, the right may not be waived or bargained away. MCL 38.172;
 
 Waits v Ann Arbor Public Schools,
 
 221 Mich App 183, 188-189; 561 NW2d 851 (1997). Clearly, tenure is not of the same kind, class, character, or nature as employee “benefits” generally considered employment compensation and which are subject to mandatory collective bargaining. See MCL 380.483a(l)(d), 423.215;
 
 Detroit Police Officers Ass’n v Detroit,
 
 391 Mich 44, 54-55; 214 NW2d 803 (1974).
 

 Furthermore, the TTA (1937 PA 4) predates the ITFRA (1967 PA 8). The later adopted MCL 38.91(3) (added by 1993 PA 59, effective June 11, 1993) of the tta, specifically addresses tenure for teachers employed by consortiums. It provides that a consortium teacher can earn tenure in only one district, which is the fiscal agent of the district (here, Willow Run), or the district otherwise specified by written agreement (none exists in this case). Thus, even assuming that MCL 124.534(d) and MCL 38.91(3) both apply to the present facts, where two statutes or provisions conflict and one is specific to the subject matter while the other is only generally applicable, the specific statute
 
 *435
 
 prevails.
 
 In re Brown,
 
 229 Mich App 496, 501; 582 NW2d 530 (1998). Similarly, a later statute will control over an earlier one, especially if the later statute is more specific, as in this case.
 
 People v Ellis,
 
 224 Mich App 752, 756; 569 NW2d 917 (1997). Therefore, MCL 38.91(3) prevails in the present case.
 

 Plaintiffs’ argument that MCL 38.91(3) applies only if a probationary teacher attains tenure is unavailing and would lead to the absurd situation where a tenured teacher could be in a worse position than a probationary teacher if both were hired by a district that is not the fiscal agent of a dissolving consortium. Even if we were to assume that an ambiguity may be created out of the plain language of the statute to support plaintiffs’ position, we must avoid such an absurd result.
 
 McAuley v General Motors Corp,
 
 457 Mich 513, 518; 578 NW2d 282 (1998).
 

 For the foregoing reasons, the trial correctly denied plaintiffs’ motion for summary disposition but erred in not granting defendants counterrequest for judgment in their favor pursuant to MCR 2.116(I)(2).
 

 We affirm in part, reverse in part, and remand to the trial court for entry of judgment in favor of defendants. We do not retain jurisdiction.
 

 [1]
 

 Defendants also argued below that the trial court lacked subject-matter jurisdiction because the State Tenure Commission must first address the issue whether a probationary teacher has achieved tenure. In response, the trial court noted that the State Tenure Commission did not have jurisdiction over the present dispute because “[a]II of plaintiffs here are probationary teachers without continuing tenure,” citing MCL 38.84,
 
 *423
 
 MCL 38.121, and
 
 Lipka v Brown City Community Schools (On Rehearing),
 
 403 Mich 554, 559; 271 NW2d 771 (1978). However, defendants have not raised this issue on appeal; therefore, this argument has been abandoned.-
 
 Caldwell v Chapman,
 
 240 Mich App 124, 132; 610 NW2d 264 (2000). In any event, because jurisdiction over the underlying controversy has not been withheld from the circuit court by statute or the Michigan Constitution, nor has jurisdiction been granted exclusively to another court or agency (e.g., the State Tenure Commission), the circuit court had subject-matter jurisdiction. MCL 600.605;
 
 People v Goecke,
 
 457 Mich 442, 458; 579 NW2d 868 (1998);
 
 DNR v Holloway Constr Co,
 
 191 Mich App 704, 705; 478 NW2d 677 (1991). However, we note that in some disputes involving tenure, the circuit court should decline to exercise jurisdiction until completion of administrative proceedings in the first instance. See, e.g.,
 
 Slocum v Littlefield Public Schools Bd of Ed,
 
 127 Mich App 183, 189; 338 NW2d 907 (1983) (State Tenure Commission has jurisdiction to determine whether a probationary teacher has achieved tenure), and
 
 Elgammal v Macomb Co Intermediate School Dist Bd of Ed,
 
 83 Mich App 444, 449-450; 268 NW2d 679 (1978) (doctrine of exhaustion of administrative remedies).