JENKINS v PATEL

Docket No. 233116. Submitted March 12, 2003, at Detroit. Decided April 1, 2003, at 9:15 A.M. Leave to appeal sought.

Margaret Jenkins, as personal representative of the estate of Mattie Howard, deceased, brought a wrongful-death action in Wayne Circuit Court, Marianne O. Battani, J., against Jayesh K. Patel and Comprehensive Health Services, alleging that the decedent died as a result of medical malpractice by the defendants. A jury rendered a verdict in favor of the plaintiff, awarding $10 million in noneconomic damages. The defendants filed a motion for remittitur or new trial, arguing that the damages cap set forth in MCL 600.1483 regarding medical-malpractice actions required a reduction in the damage award, or, in the alternative, that the award was excessive under MCR 2.611. The court, Gershwin A. Drain, J., concluded that the damages cap under MCL 600.1483 did not apply, but agreed that the award was excessive. Judge Drain, however, did not set a remittitur amount, finding it difficult to assess damages because he had not been present at the trial to hear testimony of the witnesses. The court also refused to grant the defendants a new trial. The defendants appealed.

The Court of Appeals *held*:

1. The damages cap set forth in MCL 600.1438 regarding medical-malpractice actions does not apply to wrongful-death actions predicated on medical malpractice. Rather, a review of the specific language of the wrongful-death act (WDA), MCL 600.2922, and MCL 600.1438, and the legislative history behind both statutes, indicates an intent by the Legislature that the WDA exclusively govern all areas of a wrongful-death action, including an award of noneconomic damages, and that the Legislature did not intend that the damages cap in MCL 600.1438 be applied to limit noneconomic damages in a wrongful-death, medical-malpractice action.

2. The trial court abused its discretion in failing to set a remittitur amount or grant the defendants a new trial under MCR 2.611 after the court determined that the damage award was excessive. Allowing an award that the trial court found excessive to stand, without any avenue of relief for the defendants, materially affects the defendants' substantial rights. MCR 2.611. The matter must be

remanded. On remand, the court must determine a remittitur amount or grant a new trial on damages only.

Affirmed in part, reversed in part, and remanded for further proceedings.

KELLY, J., concurring, agreed with the result reached by the majority but wrote separately to underscore that the plain language of the wrongful-death act, MCL 600.2922, precludes application of the damages cap set forth in MCL 600.1438 to the instant case.

DAMAGES — WRONGFUL-DEATH ACT — NONECONOMIC DAMAGES — LIMITS.

The wrongful-death act, MCL 600.2922, specifically controls all aspects of a wrongful-death action, including an award of noneconomic damages, and the damages cap set forth in MCL 600.1438 will not be applied to limit noneconomic damages in a wrongful-death action predicated on medical malpractice.

*Ira B. Saperstein* for the plaintiff.

*Kitch Drutchas Wagner DeNardis & Valitutti* (by *Susan H. Zitterman*) and *Grier & Copeland, P.C.* (by *Wilson Copeland* and *Dora Brantley*), for the defendants.

Before: COOPER, P.J., and MURPHY and KELLY, JJ.

MURPHY, J. Defendants Jayesh K. Patel and Comprehensive Health Services appeal as of right from a judgment entered pursuant to a jury verdict that awarded plaintiff Margaret Jenkins, personal representative of the estate of Mattie Howard, $10 million in damages in this wrongful-death, medical-malpractice action. On the basis of our resolution of this appeal, it is necessary to address only two central issues. First, we must determine whether Michigan's wrongful-death act (WDA), MCL 600.2922, governs the award of noneconomic damages arising out of a death caused by medical-malpractice, thereby precluding the application of the medical-malpractice cap on noneconomic damages found in MCL 600.1483 (damages cap). We hold that the WDA controls an award of damages where a plaintiff pursues a wrong-

ful-death action predicated on medical malpractice. Therefore, the damages cap is inapplicable and does not limit the noneconomic damages recoverable by plaintiff. The second issue is whether the trial court erred in denying defendants' motion for remittitur or new trial. We hold that the trial court erred in failing to determine a remittitur amount after concluding that the damage award was excessive, where the court also did not grant a new trial.

### I. UNDERLYING FACTS

Plaintiff brought this wrongful-death action in March 1998, seeking to recover damages for the death of her mother, Mattie Howard. The complaint alleged that Ms. Howard's death was caused by defendants' medical malpractice. Ms. Howard began treating with defendant Dr. Patel in May 1992, shortly after being hospitalized for a stroke. Ms. Howard had a ten-to fifteen-year history of hypertension. She also suffered from heart disease and had lost a significant amount of her kidney function. Additionally, her stroke had caused some damage to the vessels in her brain. Dr. Patel monitored Ms. Howard's blood pressure and prescribed various medications to treat her hypertension. Dr. Patel referred Ms. Howard to a nephrologist in late 1993, after tests he ordered showed decreased kidney function. She began dialysis treatment in May 1994. In November 1995, Ms. Howard was admitted to Sinai Hospital, where her condition deteriorated and she died. Plaintiff contended that Dr. Patel negligently managed Ms. Howard's renal disease and hypertension, which ultimately led to her death. Plaintiff's expert testified in detail concerning how Dr. Patel breached the standard of care that was required of him in treating Ms. Howard and how this led to her

demise. Plaintiff sought damages for the loss of soci-
ety and companionship sustained by Ms. Howard's
seven children and seven siblings. The jury found in
favor of plaintiff and awarded $10 million in
noneconomic damages.

Defendants filed a motion for remittitur or new
trial, arguing that the damages cap required a reduc-
tion in the damage award, and, in the alternative, that
the award was excessive. The judge who presided
over the jury trial accepted a position on the federal
bench, and was no longer on the bench at the time
the motion for remittitur or new trial was heard;
therefore, the judge who heard the motion relied on
the trial transcript in order to render a ruling.[1] The
trial court ruled that the WDA controlled and that the
damages cap therefore was inapplicable. With respect
to the alleged excessiveness of the damage award, the
trial court agreed on the record that the award was
excessive; however, the court failed to set a remittitur
amount because it found it too difficult to determine
an appropriate amount of damages in light of the fact
that the court was not personally present to hear the
testimony of witnesses and judge their credibility. The
trial court also refused to grant defendants a new
trial.

## II. WRONGFUL-DEATH ACT VERSUS THE MEDICAL-MALPRACTICE DAMAGES CAP

### A. STANDARD OF REVIEW

We are asked to determine whether the WDA gov-
erns an award of damages with respect to

---

[1] For purposes of this opinion, reference to the "trial court" shall relate
to the succeeding judge who heard and ruled on the motion for remittitur
or new trial.

noneconomic losses suffered in wrongful-death actions predicated on medical malpractice. This issue involves statutory interpretation, which is a question of law that this Court reviews de novo. *In re RFF*, 242 Mich App 188, 198; 617 NW2d 745 (2000).

### B. THE PARTIES' APPELLATE ARGUMENTS

Defendants argue that the damages cap clearly states that it applies to any action alleging medical malpractice. They contend that the trial court committed error in refusing to apply the cap. Defendants assert that the fact that plaintiff used the WDA to bring the lawsuit did not change the underlying character of the lawsuit, which sounded in medical malpractice. According to defendants, the damages cap applies even though there is no specific reference to it in the WDA. Moreover, it is argued that the specific and more recently enacted damages cap superseded any inconsistent language in the WDA. Additionally, defendants maintain that the legislative history of the damages cap confirms that that cap now applies in wrongful-death actions, where, in 1993, the Legislature eliminated death as an exception to the cap, thereby providing for a cap on all medical-malpractice actions, including those where death resulted from the malpractice.

Plaintiff maintains on appeal that the damages cap is inapplicable because: (1) the WDA is the exclusive remedy in wrongful-death cases such as this one, (2) the WDA is the more specific statute and takes precedence over the damages cap, and (3) in examining relevant statutory provisions, the Legislature obviously did not intend for the cap to apply in wrongful-death cases.

### C. GUIDING PRINCIPLES OF STATUTORY CONSTRUCTION
### AND ANALYSIS

In *Roberts v Mecosta Co Gen Hosp,* 466 Mich 57, 63; 642 NW2d 663 (2002), the Michigan Supreme Court, reviewing principles of statutory construction, stated:

> An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature. To do so, we begin with an examination of the language of the statute. If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written. A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [Citations omitted.]

Every word or phrase contained in a statute should be accorded its plain and ordinary meaning. *Slater v Ann Arbor Pub Schools Bd of Ed,* 250 Mich App 419, 428-429; 648 NW2d 205 (2002). Moreover, we presume that every word in a statute has some meaning, and this Court should avoid any construction that would render any part of a statute surplusage or nugatory. *Karpinski v St John Hosp-Macomb Ctr Corp,* 238 Mich App 539, 543; 606 NW2d 45 (1999).

If reasonable minds can differ concerning the meaning of a statute, judicial construction is appropriate. *Slater, supra* at 428. "Where ambiguity exists in a statute, a court may refer to the history of the legislation in order to determine the underlying intent of the Legislature." *Luttrell v Dep't of Corrections,* 421 Mich 93, 103; 365 NW2d 74 (1984). Courts may take cognizance of facts and events surrounding the passage and purpose of the legislation. *Id.*

We commence our analysis by closely examining the language contained in the relevant statutes, beginning with the WDA. Plaintiff's action was brought under the WDA, MCL 600.2922, which provides, in pertinent part:

(1) Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances that constitute a felony.

(2) Every action under this section shall be brought by, and in the name of, the personal representative of the estate of the deceased person. . . .

\*     \*     \*

(6) In every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including . . . damages for the loss of financial support and the loss of the society and companionship of the deceased. . . .

MCL 600.2921 provides, in part, that "[a]ctions on claims for injuries which result in death *shall not* be prosecuted after the death of the injured person except pursuant to [MCL 600.2922]." (Emphasis added.) There having been no common-law right of recovery in the survivors of a person wrongfully killed, the sole source of rights in such a case is the WDA. *Courtney v Apple*, 345 Mich 223, 228; 76 NW2d 80 (1956); *Crystal v Hubbard*, 92 Mich App 240, 243; 285 NW2d 66 (1979), rev'd on other grounds 414 Mich 297 (1982). Our Supreme Court in *Courtney, supra* at

228, stated that "[t]he remedy under the death act[2] . . . is exclusive, and the recovery of damages is necessarily limited to those specified by the [L]egislature and sustained by proofs." Thus, plaintiff was statutorily required to proceed with this action for wrongful-death damages pursuant to the WDA.

Examining the language of MCL 600.2922(1), it is beyond dispute that the WDA applies in the context of an action for medical malpractice, where, as here, a death was caused by the negligent act of another as found by the trier of fact. See *Miller v Mercy Mem Hosp*, 466 Mich 196; 644 NW2d 730 (2002). Moreover, the WDA addresses an award of damages and directs a court or jury in "*every action*" to "award damages as the court or jury shall consider fair and equitable . . . ." MCL 600.2922(6) (emphasis added). Additionally, with respect to the nature of the damage claim, the WDA specifically encompasses "loss of the society and companionship of the deceased." MCL 600.2922(6). Therefore, standing alone, the WDA mandates recovery in any amount, limited only by the requirement that the amount be fair and equitable, for noneconomic losses, including those for loss of society and companionship. Without taking into consideration the damages cap, and applying the rules of statutory construction enunciated in *Roberts, supra* at 63, the WDA clearly and unambiguously governs a medical-malpractice action involving death and the accompanying request for damages. This was clearly the

---

[2] A wrongful-death action at the time *Courtney* was decided was controlled by MCL 691.581 *et seq.*, repealed by 1961 PA 236, and that act similarly directed the court or jury to award damages in an amount that was fair and just if liability was established, MCL 691.582(2). *Courtney, supra* at 228-229.

Legislature's intent in enacting the WDA. Tort-reform legislation, which included the damages cap, did not result in any amendment of the WDA.

We now turn to the damages-cap statute, MCL 600.1483, which is applicable in medical-malpractice actions with respect to an award of noneconomic damages. The original, single-tiered damages cap, enacted in 1986, listed several exceptions to the cap, specifically including death, thereby precluding any limit on noneconomic damages if the exception applied. 1986 PA 178, MCL 600.1483(1)(a)-(g) before amendment by 1993 PA 78.[3] The original language of the damages cap provided, in pertinent part, as follows:

> (1) In an action for damages alleging medical malpractice against a person or party specified in section 5838a, damages for noneconomic loss which exceeds $225,000.00 shall not be awarded unless 1 or more of the following circumstances exist:
>
> (a) There has been a death.
>
> (b) There has been an intentional tort.
>
> (c) A foreign object was wrongfully left in the body of the patient.
>
> (d) The injury involves the reproductive system of the patient.
>
> (e) The discovery of the existence of the claim was prevented by the fraudulent conduct of a health care provider.
>
> (f) A limb or organ of the patient was wrongfully removed.
>
> (g) The patient has lost a vital bodily function. [1986 PA 178, MCL 600.1483.]

---

[3] Thus, as originally enacted, the damages cap statute that exempted death from the cap was consistent with the WDA.

MCL 600.1483 in its current version has a two-tiered damages cap. Section 1483 draws more narrow exceptions and imposes a ceiling on the recovery of noneconomic damages even for these exceptions. The Legislature did not amend the WDA in conjunction with the amendment of § 1483 in 1993. Relevant to our analysis is the Legislature's elimination of the reference to death. The statute now provides, in pertinent part:

(1) In an action for damages alleging medical malpractice by or against a person or party, the total amount of damages for noneconomic loss recoverable by all plaintiffs, resulting from the negligence of all defendants, shall not exceed $280,000.00 unless, as the result of the negligence of 1 or more of the defendants, 1 or more of the following exceptions apply as determined by the court pursuant to section 6304, in which case damages for noneconomic loss shall not exceed $500,000.00:

(a) The plaintiff is hemiplegic, paraplegic, or quadriplegic resulting in a total permanent functional loss of 1 or more limbs caused by 1 or more of the following:

(i) Injury to the brain.
(ii) Injury to the spinal cord.
(b) The plaintiff has permanently impaired cognitive capacity rendering him or her incapable of making independent, responsible life decisions and permanently incapable of independently performing the activities of normal, daily living.
(c) There has been permanent loss of or damage to a reproductive organ resulting in the inability to procreate.

*    *    *

(3) As used in this section, "noneconomic loss" means damages or loss due to pain, suffering, inconvenience, physical impairment, physical disfigurement, or other noneconomic loss. [1993 PA 78, MCL 600.1483.]

We first acknowledge that § 1483 applies in an action for damages alleging medical malpractice, and that the case before us, with respect to the subject matter from which the negligence arose, is such an action. The question initially is whether the language contained in § 1483 clearly and unambiguously leads to the conclusion that it applies in a wrongful-death action; the answer affects whether we confine our determination of the Legislature's intent to the language as drafted or additionally consider the history of the statute. Because the term "death" is not specifically included in § 1483, it is necessary to discuss whether, by implication, the statute applies in a wrongful-death action, taking into consideration the actual words used and the context of that use. A cogent argument can be made that the lack of any reference to death in § 1483, in and of itself, leads to a conclusion that the statute is ambiguous or that it does not apply where death results from medical malpractice. That aside, it is not unreasonable to argue that the composition of § 1483, with its two-tiered cap, does not require any specific reference to death or any other injury not included as an exception, where there is reference to specific injuries in the exceptions, and where implicitly all other injuries arising from medical malpractice, including death, fall within the lower cap.

However, there is express language contained in § 1483 that indicates that it does not apply in wrongful-death actions. Noneconomic loss is defined in the statute as meaning "damages or loss due to pain, suffering, inconvenience, physical impairment, physical disfigurement, or other noneconomic loss." MCL 600.1483(3). Although the definition references "other noneconomic loss," it does not specifically touch on

loss of society and companionship, which are unmistakenly associated with a wrongful-death action. MCL 600.2922(6); *McTaggart v Lindsey*, 202 Mich App 612, 616; 509 NW2d 881 (1993) (claims for loss of society and companionship address compensation for the destruction of family relationships that results when one family member dies). Therefore, we must determine whether "other noneconomic loss" was meant to cover damages associated with loss of society and companionship, or in other words losses related to wrongful death.

Under the doctrine of statutory construction known as ejusdem generis, if a law contains general words that follow a designation of particular subjects, those general words are presumed to include only things of the same kind, class, character, or nature as the subjects enumerated. *Sands Appliance Services, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241 (2000). The doctrine was recently explained in more detail by our Supreme Court in *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 350 n 1; 656 NW2d 175 (2003), wherein the Court stated approvingly:

> In *A Matter of Interpretation* (Princeton, New Jersey: Princeton University Press, 1997), p 26, United States Supreme Court Justice Antonin Scalia explains that the ejusdem generis canon of statutory construction "stands for the proposition that when a text lists a series of items, a general term included in the list should be understood to be limited to items of the same sort. For instance, if someone speaks of using 'tacks, staples, screws, nails, rivets, and other things,' the general term 'other things' surely refers to other fasteners."[4]

---

[4] The *Weakland* Court addressed the language in MCL 418.315(1), which provides that "[t]he employer shall also supply to the injured employee dental service, crutches, artificial limbs, eyes, teeth, eyeglasses,

The Supreme Court noted that it has utilized this canon of statutory construction frequently in defining the scope of a broad term following a series of specific items. *Weakland, supra* at 349.

Here, damages or loss due to pain, suffering, inconvenience, physical impairment, and physical disfigurement clearly relate to damages sustained by an individual surviving plaintiff rather than damages sustained by next of kin in a wrongful-death action who are represented by the personal representative.[5] There is no specific mention of damages or losses unique to relatives of a person who has died, such as loss of society and companionship.[6] There are at least four other statutes that we are aware of in which our Legislature has defined noneconomic loss or damage as specifically including loss of society and companionship, MCL 600.2945, 600.2969, 600.2970 and

---

hearing apparatus, and other appliances necessary to cure, so far as reasonably possible, and relieve from the effects of the injury." *Weakland, supra* at 348. The Court ruled, under the doctrine of ejusdem generis, that the phrase "other appliances" denoted other artificial adaptive aids that serve to directly ameliorate effects of a medical condition, and this did not include a van that the plaintiff sought to have covered through worker's compensation benefits. *Id.* at 350.

[5] Persons entitled to damages under the WDA include, in part, the "deceased's spouse, children, descendants, parents, grandparents, brothers and sisters[.]" MCL 600.2922(3).

[6] The Michigan Model Civil Jury Instruction concerning wrongful-death damages closely parallels the WDA and lists such items of damages as funeral and burial expenses, loss of financial support, loss of service, loss of gifts or other valuable gratuities, loss of parental training and guidance, as well as loss of society and companionship. M Civ JI 45.02. None of these is directly mentioned in § 1483. Pain and suffering are also mentioned, but they are expressly defined as conscious pain and suffering that occurred before death. M Civ JI 45.02(2). On the other hand, damage instructions outside wrongful death list such damages as general pain and suffering, mental anguish, fright and shock, denial of social pleasure, embarrassment, humiliation, physical impairment, and physical disfigurement. M Civ JI 50.02 and 50.03.

691.1416.[7] However, the Legislature has not done so
here. Loss of society and companionship verbiage has
been included in case law dating back as far as 1899.
*Lafler v Fisher*, 121 Mich 60; 79 NW 934 (1899). We
can only conclude that the examples of noneconomic
losses specifically enumerated in § 1483 are not of the
same kind, class, character, or nature as those associ-
ated with a wrongful-death action. Therefore, under
the doctrine of ejusdem generis, "other noneconomic
loss," as used in § 1483(3), does not refer to
noneconomic losses related to wrongful-death
actions.

Taking into consideration only the language of the
statutes, we conclude that the Legislature intended
the WDA to exclusively govern all areas of a wrongful-
death action as expressed in its language, including
the award of noneconomic damages, and that the Leg-
islature did not intend the damages cap to limit those

---

[7] MCL 600.2945, which provides definitions related to products-liability
actions, defines noneconomic loss as "any type of pain, suffering, inconve-
nience, physical impairment, disfigurement, mental anguish, emotional
distress, *loss of society and companionship*, loss of consortium, injury to
reputation, humiliation, or other nonpecuniary damages." MCL 600.2945(f)
(emphasis added). MCL 600.2969, repealed under its own provisions Janu-
ary 1, 2003, included definitions related to an action against financial insti-
tutions for computer-date failures, and it defined noneconomic damages
as "pain, suffering, inconvenience, physical impairment, disfigurement,
mental anguish, emotional distress, *loss of society and companionship*,
loss of consortium, injury to reputation, humiliation, or other nonpecu-
niary damages caused by a computer date failure." MCL 600.2969(1)(l)
(emphasis added). MCL 600.2970, repealed under its own provisions Janu-
ary 1, 2003, related to actions for computer-date failure and defined
noneconomic damages identical to MCL 600.2969. MCL· 600.2970(1)(j).
MCL 691.1416, which relates to liability for sewage-disposal systems,
defines noneconomic damages comparable to the above statutes, specifi-
cally including loss of society and companionship. MCL 691.1416(f).

damages in a wrongful-death, medical-malpractice action.[8]

Moreover, it is a well-known principle that the Legislature is presumed to be aware of all existing statutes when enacting a new statute. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). The relevant portions of the WDA had long been established when the 1993 amendment was enacted. See *Courtney, supra* at 228-229; see also historical and statutory notes to § 2922. Presuming that the Legislature was aware of the damage-award provisions of

---

[8] Even if we were to find the damages cap ambiguous with regard to whether it was intended to apply in wrongful-death actions, the legislative history sheds no light on the issue. We first note, as stated above, that before the 1993 amendment, death was included as an exception and no cap was applicable. One could reason that the Legislature involved in enacting the original statute in 1986 did not believe that the WDA was controlling, thereby necessitating the specific reference to death in the statute. However, it does not necessarily follow that the Legislature in 1993 was acting under the same belief. The only legislative intent that is relevant in construing a statute is the intent of the Legislature that enacted the statute. See *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 686 n 9; 649 NW2d 760 (2002). Moreover, the inclusion of the specific reference to death in 1986 may have been part of an effort to clearly and definitively proclaim the Legislature's position that damages related to death would not be capped, accepting that the WDA was applicable, but merely reinforcing the position by referencing death. A review of the legislative analysis connected to the 1993 amendment has not revealed any information with respect to the Legislature's intention in deleting death from the statutory language. Defendants rely on Senate and House Journal entries that do in fact indicate multiple attempts to include death as an exception that would have resulted in a $500,000 cap on noneconomic damages related to wrongful death. 1993 Journal of the Senate 274, 953, 993-994, 1007; 1995 Journal of the House 1061. However, contrary to defendants' argument that this established an intent to cap damages in wrongful-death actions and to cap them at the lower tier, the journal entries can be viewed in two distinct ways. The attempt to add death as an exception may have been part of an effort to place some limit on noneconomic wrongful-death damages, as opposed to no cap at all, assuming a belief by legislators that the WDA otherwise governed the situation, or it may have been part of an effort to avoid placement of a cap at the lower amount of $280,000. Either way, we would be speculating regarding the Legislature's intent.

the WDA, it was incumbent on the Legislature to include some language in § 1483 to specifically indicate its intent that the damages cap applied in wrongful-death actions in order to avoid any conflict. Keeping this presumption in mind, the failure to so indicate reasonably leads to the conclusion that the legislative intent was to exclude wrongful-death actions from the ceilings contained in § 1483, especially where no change was simultaneously made to the WDA to reflect a limit on damages. If we were to conclude that the damages cap controlled, it would result at best, from a plaintiff's standpoint, in a recovery limited to $500,000; an amount equal to the limit on damages recoverable for some injuries short of death. Without specific direction from the Legislature, we are not prepared to say that the Legislature intended to place an equal or lesser value on a person's life.

After reviewing the plain language of § 1483 and considering the legislative history, it is clear to us that the Legislature did not intend a wrongful-death action to be governed by the damages cap.

Assuming that the WDA and the damages cap conflict in a manner that cannot be reconciled, the case law would still direct us to conclude that the WDA governs.[9] Where there is conflict between two statutes,

---

[9] Two statutes that relate to the same subject or share a common purpose are in pari materia and should be read together as one law, even if they contain no reference to one another and were enacted on different dates. *Jackson Community College v Dep't of Treasury*, 241 Mich App 673, 681; 621 NW2d 707 (2000), quoting *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). When two statutes lend themselves to a construction that avoids conflict, that construction should control. *Id.* Construction of two seemingly competing statutes should give effect to each without repugnancy, absurdity, or unreasonableness. *Michigan Humane Society v Natural Resources Comm*, 158 Mich App 393, 401; 404 NW2d 757

one of which is specific to the subject matter while the other is only generally applicable, the specific statute prevails. *In re Brown*, 229 Mich App 496, 501; 582 NW2d 530 (1998). At first glance it appears that both statutes are equally specific to different subject matters. A wrongful-death action specifically relates to a case where a person has died due to a wrongful act, while a medical-malpractice action could relate to a wide spectrum of possible harms. On the other hand, a medical-malpractice action specifically relates to negligence arising out of medical actions and inactions, while a wrongful-death action could relate to a setting involving medical malpractice, products liability, negligence, intentional torts, and so forth. However, in the context of the specific types of damages recoverable under each statute, we find the WDA to be superior because it more specifically denotes the type of damages to be considered by the trier of fact.[10]

---

(1987). Our Supreme Court in *People v Bewersdorf*, 438 Mich 55, 68; 475 NW2d 231 (1991), stated:

> Statutes which may appear to conflict are to be read together and reconciled, if possible. *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 65; 214 NW2d 803 (1974); *People v Buckley*, 302 Mich 12, 22; 4 NW2d 448 (1942). However, where two statutes actually conflict, both cannot stand as the law. *Winter v Royal Oak City Manager*, 317 Mich 259, 265; 26 NW2d 893 (1947); *Bd of Ed v Blondell*, 251 Mich 528, 531; 232 NW 375 (1930).

Here, § 1483 can be read together and reconciled with the WDA; the damages cap being construed to apply in all medical-malpractice cases in which the plaintiff seeks noneconomic damages except for those cases seeking wrongful-death damages, in which case, the WDA would control. To rule otherwise would render nugatory that portion of the WDA requiring the trier of fact to determine the amount of damages in an amount that is fair and equitable. Our ruling leaves intact the general aim and purpose of each statute.

[10] Once again, this is assuming a direct conflict between the statutes, which necessarily would include a finding, which we have not made, that "other noneconomic loss" included loss of society and companionship and other standard, wrongful-death damages.

Ultimately, the focus needs to be on damages as opposed to the setting in which the negligent act occurred because the damage award is the central issue of debate. We affirm the trial court's ruling that the WDA governs the award of noneconomic damages.

### III. MOTION FOR REMITTITUR OR NEW TRIAL

Having found that the WDA governs in this action, thereby removing any statutory ceiling on the amount of noneconomic damages plaintiff can recover, it is necessary to review defendants' argument that the trial court erred in failing to grant the motion for remittitur or new trial, where the court found the damage award to be excessive.

A ruling on a motion for remittitur or new trial premised on a claim that the damage award was excessive is reviewed for an abuse of discretion. *Palenkas v Beaumont Hosp*, 432 Mich 527, 531; 443 NW2d 354 (1989). MCR 2.611(A) provides:

> (1) A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:
>
> *  *  *
>
> (c) Excessive or inadequate damages appearing to have been influenced by passion or prejudice.
> (d) A verdict clearly or grossly inadequate or excessive.

MCR 2.611(E)(1) provides that if a "court finds that the only error in the trial is the . . . excessiveness of the verdict, it may deny a motion for new trial on condition that within 14 days the nonmoving party consent in writing to the entry of judgment in an

amount found by the court to be the . . . highest . . . amount the evidence will support."

The order that denied the motion for remittitur or new trial provided that the motion was denied for the reasons stated on the record. On the record, the trial court found that the verdict was excessive, but concluded that it could not set a remittitur amount; therefore, the motion was denied. Plaintiff has not filed a cross-appeal challenging the trial court's conclusion that the damage award was excessive, and defendants, the appellants here, merely agree with the court's conclusion that damages were excessive. To preserve an issue for review, an appellee must file a cross-appeal. MCR 7.207; *Barnell v Taubman Co, Inc*, 203 Mich App 110, 123; 512 NW2d 13 (1993). Therefore, the issue whether the damage award was excessive, or whether the trial court erred in finding the award to be excessive, is not properly before us.

However, we do note that the trial court's ruling from the bench that the damage award was excessive, when examined in context, could be interpreted as a nondefinitive ruling on the issue of excessiveness, considering the judge's concern that he had not been present at trial and thus could not set a remittitur amount. As such, we leave open the opportunity for the trial court on remand to revisit the issue.

Treating the trial court's ruling as one finding the damage award to be excessive, and taking into consideration MCR 2.611(A)(1)(c)-(d) and (E), we hold that the trial court abused its discretion in failing to set a remittitur amount, where it did not order a new trial. Clearly, allowing an award that the trial court found excessive to stand, without any avenue of relief for the defendants, materially affects defendants' sub-

stantial rights. Were the trial court's ruling to stand, defendants would be obligated to pay a judgment that the court found to be unsupported by the evidence.

We are sympathetic to the trial court's plight; however, on remand the court is to make a concerted effort to set a remittitur amount under MCR 2.611(E). There is no court or judge in a superior position to rule on this issue and set a remittitur amount; thus, we direct the trial court to render a decision and set the dollar amount. However, we do recognize that the trial court has the discretion and option to grant a new trial on damages only. MCR 2.611(A) and (E).

The trial court is to be guided by our Supreme Court's ruling in *Palenkas, supra* at 532-533, take into consideration any prejudice and passion of the jury that may have been involved and dollar awards in similar cases, and eventually determine a remittitur amount that reflects reasonable compensation for the losses incurred as judged by the evidence presented. A remittitur amount must be set at the highest amount the evidence will support. MCR 2.611(E)(1); *Palenkas, supra* at 531.

### IV. CONCLUSION

We hold that the WDA controls where a death arises out of medical malpractice, and where a plaintiff seeks damages for wrongful death. Therefore, the damages cap is not implicated here and does not limit the noneconomic damages recoverable by plaintiff. Additionally, we hold that the trial court erred in failing to determine a remittitur amount after concluding that the damage award was excessive. We remand to the trial court for a determination of a remittitur

amount, after which the parties may proceed accordingly pursuant to MCR 2.611(E), or, should the court decide to grant a new trial, for a trial on damages only. *Kellom v Ecorse*, 329 Mich 303, 310; 45 NW2d 293 (1951) ("If a retrial is had, each party may present testimony limited to such question of damages.").[11]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

COOPER, P.J., concurred.

KELLY, J. *(concurring).* I concur in the result reached by the majority, but write separately to underscore that in my estimation, the plain language of the wrongful death act (WDA), MCL 600.2922, precludes the application of MCL 600.1483 (damages cap) in the instant case.

### I. STATUTORY CONSTRUCTION

If the language of a statute is clear, no further analysis is necessary or allowed to expand what the Legislature clearly intended to cover. *Miller v Mercy Mem Hosp*, 466 Mich 196, 201; 644 NW2d 730 (2002). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent. *Nicholas v Meridian Charter Twp Bd*, 239 Mich App 525, 530; 609 NW2d 574 (2000). "The first criterion in determining intent is the specific language of the statute." *Id.* The Legislature is presumed to have intended the meaning plainly expressed. *Id.*

---

[11] Once again, we allow the trial court to revisit the excessiveness issue should the court acknowledge that it never definitively ruled on the issue.

### II. EXCLUSIVE REMEDY

As noted by the majority, the WDA provides the *exclusive* remedy for wrongful-death cases. MCL 600.2921 provides in relevant part:

> Actions on claims for injuries which result in death shall not be prosecuted after the death of the injured person *except pursuant to the next section*. If an action is pending at the time of death the claims may be amended to bring it under the next section. A failure to so amend will amount to a waiver of the claim for *additional* damages resulting from death. [Emphasis added.]

Here, plaintiff sought damages for losses sustained by decedent's seven children and seven siblings. Because any underlying malpractice action brought on behalf of decedent had she been alive would not have survived her death, plaintiff had no other recourse than to file suit pursuant to the WDA. The WDA contains the substance, procedures, and the exclusive measure of damages in an action brought against one whose action or inaction has caused the death of another. The WDA was not amended by tort-reform legislation,[1] and it does not include a statutory cap on damages. MCL 600.2922(6) provides:

> In every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death; and damages for the loss of financial

---

[1] The most recent legislative amendment to the WDA occurred in 2000.

support and the loss of the society and companionship of the deceased.

Thus, considering the plain meaning and purpose of the statute, it is clear that plaintiff's action is governed by the specific provisions of the WDA. Those provisions set no limit on noneconomic damages arising from wrongful-death claims.

Additionally, the damages cap does not list damages specific to wrongful-death claims. MCL 600.1483(3) defines noneconomic damages as "damages or loss due to pain, suffering, inconvenience, physical impairment, physical disfigurement, or other non-economic loss." Other than the general term "other non-economic loss," the list specifies only damages that are sustained by an injured person, not an estate or survivors of a deceased. It also makes no reference to estates or decedents' survivors because obviously an estate could not bring an action for damages under the damages cap. I agree with the majority's analysis under the doctrine of ejusdem generis, but would also apply that of *expressio unius est exclusio alterius*. According to this doctrine, the express mention in a statute of one thing implies the exclusion of other similar things. *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 572 n 8; 592 NW2d 360 (1999); *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285, 298; 565 NW2d 650 (1997). Thus, the Legislature's express mention of injuries of varied severity, specific to claims brought by living medical-malpractice claimants precludes the conclusion that the general term "other non-economic loss" includes

losses attributable to a different and discrete set of wrongful-death claimants.[2]

### III. REFERENCE TO OTHER STATUTORY PROVISIONS

In further support of the conclusion that the damages cap is not applicable to actions brought under the WDA, I would note that the Legislature has knowledge of existing laws and is presumed to have considered the effect of new laws on *all* existing laws. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). In light of the fact that the Legislature is presumed to have knowledge that the WDA provides for additional damages in wrongful-death claims and the fact that it rejected the opportunity to list death as an injury subject to the damages cap, the inescapable conclusion is that the damages cap does not apply in wrongful-death cases arising from underlying medical-malpractice claims. This conclusion is buttressed by reference to the products liability cap act (PLCA), MCL 600.2946a. In the PLCA, a statute analogous to the damages cap, the Legislature not only specifically addressed death, but identified death as one of the two injuries that results in the second-tier cap:

---

[2] In contrast, the WDA specifically lists damages specific to wrongful-death claims:

   [R]easonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased. [MCL 600.2922(6).]

> In an action for product liability, the total amount of damages for noneconomic loss shall not exceed $280,000.00, *unless the defect in the product caused either the person's death* or permanent loss of a vital bodily function, in which case the total amount of damages for noneconomic loss shall not exceed $500,000.00. [MCL 600.2946a(1) (emphasis added).]

Thus, while the Legislature was clearly aware that death is a possible injury in medical-malpractice claims just as in products-liability claims, it chose not to identify it as an injury subject to the damages cap.

### IV. JUDICIAL CONSTRUCTION

The parties agree that, standing alone, the language of the damages cap and the WDA is clear. However, the parties argue that when the damages cap and the WDA are read together, the provisions become ambiguous and require judicial construction. Although judicial construction is appropriate if a statute is ambiguous, i.e., if reasonable minds could differ with respect to its meaning, *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996), this Court is not obliged to agree that the statutes should be read together or accept as true the suggestion that there is ambiguity in these statutes. The mere fact that members of the bar hotly contest this issue does not require this Court to conclude that there is ambiguity.

Furthermore, I note that no argument was presented below, and the majority does not address, why these statues should be read in pari materia. Rather, it has simply been assumed that the statutes must be read in such a way because we are considering their application to wrongful-death actions based on a theory of medical malpractice. It is instructive to turn to

the definition and explanation of the rule. "In pari materia" means "of the same matter; on the same subject." Blacks Law Dictionary (5th ed, 1979). Two statutes that relate to the same subject or share a common purpose are in pari materia and must be read together as one law, even if they contain no reference to one another and were enacted on different dates. *Jackson Community College v Dep't of Treasury*, 241 Mich App 673, 681; 621 NW2d 707 (2002).

> Statutes *in pari materia* are those which relate to the same person or thing, or the same class of persons or things, or which have a common purpose. It is the rule that in construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although enacted at different times, and containing no reference one to the other. [*Detroit v Michigan Bell Tel Co*, 374 Mich 543, 558; 132 NW2d 660 (1965).]

A statute is not in pari materia even if it incidentally refers to the same subject if its scope and aim are distinct and unconnected. *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 360; 459 NW2d 279 (1990); *Palmer v State Land Office Bd*, 304 Mich 628, 636; 8 NW2d 664 (1943). Here, as discussed above, the damages cap relates to noneconomic damages attributable to injuries suffered by living medical-malpractice claimants. The purpose of the damages cap was discussed recently by another panel of this Court:

> The 1993 legislation that created the current finite limitation scheme was prompted by the Legislature's concern over the effect of medical liability on the availability and affordability of health care in the state. See House Legisla-

tive Analysis, SB 270 and HB 4033, 4403, and 4404, April 20, 1993, pp 1-2. The purpose of the damages limitation was to control increases in health care costs by reducing the liability of medical care providers, thereby reducing malpractice insurance premiums, a large component of health care costs. Id. [*Zdrojewski v Murphy*, 254 Mich App 50, 80; 657 NW2d 721 (2002).]

On the other hand, the WDA relates to claims brought by a decedent's estate and survivors. "The obvious purpose of the [WDA], originally enacted as PA 1848, No 38, is to provide an action for wrongful death whenever, if death had not ensued, there would have been an action for damages." *O'Neill v Morse*, 385 Mich 130, 133; 188 NW2d 785 (1971). Thus, the scope and aim of these statutes are distinct and unconnected. The fact that we have the occasion to consider both of these statutes and their application to a discrete type of claim, namely that involving a wrongful-death action arising from a medical-malpractice cause of action, is not the same as concluding that we must consider the two statutes in pari materia. Aside from the controversy concerning this issue, apparently occasioned more by something other than genuine legal inquiry, there would likely be no reason to consider these statutes together.[3]

In addition, reading the damages cap to apply to wrongful-death claims would improperly render parts of the WDA nugatory, a result I cannot countenance. This Court should presume that every word has some meaning and should avoid any construction that would render any part of the statute surplusage. *Hoste, supra* at 574. As far as possible, effect should

---

[3] Because the statutes should not be read in pari materia, the two rules of statutory construction advanced in defendants' argument do not apply.

be given to every sentence, phrase, clause, and word. *Pohutski v Allen Park*, 465 Mich 675, 684; 641 NW2d 219 (2002). Because the WDA lists damages specific to wrongful-death claims, applying the damages cap to wrongful-death damages would render MCL 600.2922(6) nugatory. The effect of such an impermissible judicial fiat would be to draw a line through most of MCL 600.2922(6). On the other hand, reading the WDA to apply to wrongful-death actions arising from an underlying medical-malpractice cause of action does not render the plain language of the damages cap nugatory. Although the damages cap applies "[i]n an action for damages alleging malpractice," our conclusion that the WDA applies in wrongful-death claims does not rob this language of its full force. The damages cap still applies "[i]n an action for damages alleging malpractice" in which the injuries and damages are those listed in the statute.

I also decline to accept defendants' argument that because death is no longer included as an exception to the damages, the Legislature must have intended the statute to apply to death claims. This argument must be rejected because it circumvents the plain meaning of a statute that is clear and unambiguous. It could just as well be argued that the Legislature eliminated the death exception because it was already provided for under the WDA, thus rendering a death exception redundant. Our guess regarding what the Legislature had in mind when it omitted death from the damages cap would be impermissible speculation. Additionally, it is contrary to the rule that the Legislature is charged with knowledge of all existing laws. *Walen, supra* at 248.